HESS, Appellee,

v.

**UNITED INSURANCE COMPANY OF AMERICA;  Mayfield, Admr., Appellant.**

[Cite as *Hess v. United Ins. Co. of Am.* (1991), 74 Ohio App.3d 667.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–015.

Decided June 28, 1991.

George N. Fell II and Steven E. Marcus, for appellee.

Anthony J. Celebrezze, Jr., Attorney General, and Margaret Dodane Everett, Assistant Attorney General, for appellant.

*Per Curiam.*

This is an appeal from a judgment of the Lucas County Court of Common Pleas where, following a jury trial, a judgment was entered finding that plaintiff-appellee Klaus Hess was entitled to participate in the benefits of the Ohio Workers' Compensation Fund. Defendant-appellant, James L. Mayfield, Administrator of the Bureau of Workers' Compensation, filed a timely notice of appeal and asserts as error:

"I. The trial court erred in instructing the jury in regard to disabling effects of plaintiff's angina.

"II. The trial court erred in failing to conform the general verdict to the jury interrogatories.

"III. The trial court erred in overruling defendant's motion for directed verdict and motion for judgment notwithstanding the verdict because plaintiff failed to present competent medical expert testimony on the only issue before the trier of fact."

Appellee has a medical history which includes the development of atherosclerosis ("coronary heart disease") and had a myocardial infarct ("heart attack") in 1977. On July 2, 1981, appellee, an insurance representative for United Insurance Company of America, was collecting insurance premiums from his customers. Because he would cash his clients' welfare or Social Security checks and then obtain a cash payment of the insurance premium, this process required that appellee have a large amount of cash readily available. On that particular day in July, appellee had approximately $1,500 in his pocket when he was assaulted, threatened with a knife, and robbed. The robbers, who were known by appellee, then locked appellee in the trunk of his automobile and fled. After being freed from the trunk, appellee went to the police station and, subsequently, to his residence. However, due to continuous chest pains and pain associated with angina pectoris, appellee went to the hospital on the following day.

Appellee never returned to work after July 2, 1981. Appellee filed claims for and received Ohio Workers' Compensation benefits for several medical diagnoses, including an "aggravation of pre-existing angina pectoris." Appellee's claim for total temporary disability was allowed for the period commencing on July 2, 1981 and ending on May 12, 1986.

In May 1986, appellee filed a request with the Ohio Bureau of Workers' Compensation asking that his claim be amended to include an allowance for "substantial aggravation of [his] pre-existing coronary disease." This claim was disallowed by the district hearing officer on May 15, 1986. In appellee's subsequent appeals to, respectively, the Toledo Regional Board of Review and

the Industrial Commission of Ohio, the decision of the hearing officer was affirmed. Appellant then filed a notice of appeal and complaint, pursuant to R.C. 4123.519, in the Lucas County Court of Common Pleas. At the hearing *de novo* held on the issues in this case, the following evidence was adduced.

In his testimony, appellee revealed that in the years between his heart attack in 1977 and the robbery in 1981, he suffered from angina pectoris "maybe once or twice a month." He testified that he carried nitroglycerin pills with him, but that he rarely needed to take any. After the robbery, appellee immediately experienced a great increase in the frequency and duration of the angina pectoris. As a result, appellee was required to wear nitroglycerin patches on his chest and arm on a continuous basis. Hess also testified that after the robbery he had difficulty sleeping, was impotent, had vascular problems, took many medications not previously taken to control his symptoms, and was ordered by his physician to restrict his physical activities.

The videotape deposition of appellee's attending physician, Phillip L. Horowitz, M.D., was played for the jury at trial. In that deposition, Dr. Horowitz defined coronary artery disease as "areas of narrowing or partial or complete blockages in arteries that carry blood to the muscle of the heart." The doctor testified that angina pectoris is the most frequent symptom of coronary artery disease and described it as chest pain caused by a lack of an adequate blood supply to the heart. Dr. Horowitz further stated that an increase in angina pectoris indicated, in his opinion, that the underlying coronary artery disease was progressing.

As to appellee in particular, Dr. Horowitz testified that he had been appellee's physician since 1967. The doctor provided the following relevant facts of appellee's medical history.

Appellee was hospitalized in 1974 for chest pain and underwent a coronary arteriogram. This test revealed that the left anterior descending artery leading to the heart was normal. There was a widening of the circumflex coronary artery and a narrowing of the right coronary artery in the range of forty percent to fifty percent. Appellee had his heart attack in 1977; however, he did not undergo a second arteriogram at this point in time. As of January 1981, appellee was taking three medications prescribed for the treatment of the symptoms of his coronary artery disease—nitroglycerin, to be taken as needed for angina pectoris; Lanoxin, a form of Digitalis in the amount of one tablet per day; and Quinidex, which prevented an irregular heartbeat.

After the July 1981 robbery, Dr. Horowitz treated appellee for the chest pain he was experiencing. He diagnosed his patient's condition as "a severe worsening of his angina due to the severe emotional stress of this traumatic

event." Appellee's medications were increased, and he saw Dr. Horowitz on a regular basis until November 1981, when appellee was hospitalized due to prolonged chest pain. A second arteriogram showed total blockage of both the circumflex coronary artery and the right coronary artery in addition to damage to the heart muscle and a heart valve caused by the heart attack in 1977.

After July 2, 1981, Dr. Horowitz prescribed a significantly greater number of medications to control the worsened effects of the coronary artery disease. These included the continuous application of nitroglycerin patches, a calcium blocker to prevent heart spasms, Lanoxin and nitroglycerin tablets. Appellee was also taking prescribed amounts of tranquilizers and sleeping pills.

In answering a question as to whether the robbery of July 2, 1981 had substantially aggravated the underlying coronary artery disease, Dr. Horowitz expressed the following opinion:

"Q. * * * Therefore, do you have an opinion as to whether there was a substantial aggravation of the underlying coronary artery disease and I willing [sic] ask you to respond with your answer and you may explain your answer, Doctor. Do you have an opinion in those terms based upon the legal definition which I have given you of substantial aggravation?

"A. Yes, I have an opinion.

"Q. Fine, what is that opinion?

"A. My opinion is that the events of July the 2nd, 1981, to use your phraseology, aggravated the debilitating effects of his coronary heart disease.

"The particular debilitating effects that it aggravated were the angina pectoris, the pains in the chest. Instead of having very occasional to virtually no chest pain, he began to have frequent chest pains. His entire clinical course took on a rapid acceleration from a person who was essentially symptom free he became a person who had frequent spells of chest pain. To me, as a clinical Doctor taking care of patients, this is an aggravation of the disease. From almost no pain to frequent pain this is a debilitating aggravation of the disease. This is terrible pain. This is suffering. This is disability.

" * * *

"Q. Thank you, Doctor. Now, in 1983, Doctor, you diagnosed unstable angina, is that one evidence of a progression of the disease?

"A. Yes.

"Q. So that when Mr. Bloom asks you [whether] on each date that there was some evidence of deterioration found, whether you also found some trauma on that date, and you answered you didn't, do you consider it important that there wasn't a trauma on that date? I mean, in view of the—

"A. No, I do not."

In his testimony, appellant's expert witness, Theodore D. Fraker, M.D., stated that coronary artery disease is usually asymptomatic until that point where there exists seventy percent or more blockage in one or more of the coronary arteries. Dr. Fraker defined a symptom as a "feeling or sensation that a patient reports to a physician who relates that symptom to an underlying disease process." The doctor testified that he saw no physiological change between the arteriogram of 1974 and 1981 and that, based on that evidence, it was his opinion that the robbery could not have "accelerated" the coronary artery disease. However, Dr. Fraker agreed that his evaluation spoke only to the progression of the underlying coronary artery disease, that appellee's symptoms of that disease had increased, and that, if appellee had more symptoms, he was more debilitated.

Appellant submitted one interrogatory and appellee submitted two interrogatories to be answered by the jury in conjunction with its general verdict. After the jury was instructed by the trial court, appellant objected to any instruction indicating that the jury must find that the work-related injury "hastened the debilitating effects" of the underlying condition and asserted that the correct instruction involved a charge stating that the jury must conclude that the robbery accelerated the coronary artery disease by a substantial period of time.

The jury returned a verdict finding that appellee was entitled to participate in the Ohio Workers' Compensation Fund. That judgment was journalized by the court below on April 19, 1989. Appellant filed a timely motion, pursuant to Civ.R. 50(B), for a judgment notwithstanding the verdict or, in the alternative, that appellant be granted a new trial. The basis of the motion was that the answers to the interrogatories were inconsistent with the general verdict and that appellee had failed to demonstrate any physiological worsening of the coronary artery disease. On December 12, 1989, the trial court overruled appellant's motion in its entirety.

The determination of appellant's assignments of error rests, in a large part, upon the state of the law with regard to work-related injuries which result in the aggravation of an employee's pre-existing condition or accelerate the arrival of an employee's disabling condition. The central question is whether, under R.C. 4123.01(C), appellee is entitled to receive workers' compensation benefits when the only evidence offered at trial established that a work-related injury resulted in increased symptoms of coronary atherosclerosis but did not demonstrate any physiological changes in the underlying condition itself. It is well settled that an "injury" for workers' compensation purposes includes the aggravation of a pre-existing condition. *Ackerman v. Indus.*

*Comm.* (1936), 131 Ohio St. 371, 6 O.O. 85, 3 N.E.2d 44. In *Swanton v. Stringer* (1975), 42 Ohio St.2d 356, 71 O.O.2d 325, 328 N.E.2d 794, at paragraph 1(a) of the syllabus, the Supreme Court of Ohio held:

"A disabling condition, resulting from a pre-existing disease and claimed to have been accelerated by an injury in the course of and arising out of employment, is compensable under the Workmen's Compensation Act, where it is established that such disability was accelerated by a substantial period of time as a direct and proximate result of such injury."

In construing *Swanton,* Ohio courts have applied its holding both to cases in which the claimant has asserted that the work-related injury has aggravated the pre-existing condition and also to cases in which the claimant has sought benefits for the acceleration of a disabling condition. See, *e.g., Pacatte v. Daugherty* (1988), 42 Ohio App.3d 188, 537 N.E.2d 697; *Schmidt v. Mayfield* (1987), 39 Ohio App.3d 157, 530 N.E.2d 1331. Recently, however, the Supreme Court of Ohio noted that acceleration of a disabling condition is an issue different from aggravation of a pre-existing condition. *Schell v. Globe Trucking, Inc.* (1990), 48 Ohio St.3d 1, 3, 548 N.E.2d 920, 921. The *Schell* court, citing *Swanton,* stated that in a case involving acceleration of a disabling condition, "proof that the disability or death was 'accelerated by a substantial period of time' as a result of the injury" is required. *Id.* The court then distinguished a claim related to the aggravation of a pre-existing condition by finding that such a claim does *not* contend that a "work-related injury simply accelerated the arrival of a disabling condition that was bound to occur sooner or later." *Id.* In short, it appears that the *Schell* court suggests that a claim for an aggravation of a pre-existing condition implies that the condition has worsened, in some manner, due to the work-related injury, while a claim founded upon acceleration asserts that the injury precipitated the arrival of a disabling condition that was bound to occur sooner or later but had never manifested itself prior to the injury.

Thus, the threshold question for this court is whether appellee's claim for benefits as the result of his work-related injury constituted a claim based upon an aggravation of his coronary artery disease or an acceleration of that condition. It is clear from the record of this cause that appellee's claim is founded upon the alleged aggravation of his pre-existing coronary artery disease. The focus of his claim is that his coronary artery disease has measurably worsened due to the trauma of the robbery of July 2, 1981. It is not founded upon whether the arrival of a disabling condition itself, which would have inevitably occurred, was hastened by a substantial period of time due to that injury.

The second question to be resolved before a consideration of appellant's assigned errors is the standard to be applied to determine "aggravation." In *Schell, supra,* at 3, 548 N.E.2d at 922, fn. 1, the Supreme Court of Ohio indicated that the claimant need only demonstrate "some real adverse *effect*" in order to establish injury. The Franklin County Court of Appeals has defined "aggravation" as it relates to a pre-existing condition as follows:

"The key is whether the aggravation * * * had an impact on a person's bodily functions or affected an individual's ability to function or work. In other words, did the aggravation of the pre-existing condition have a significant enough effect on the individual's ability to function that it resulted in an impairment which caused a disability? Substantially, 'aggravate' simply means the aggravation was significant enough that it caused a problem for which the person sought treatment. Any degree of effect on functioning is sufficient as long as it is not a passing, transitory, or momentary matter." *Boroff v. McDonald's Restaurants of Ohio, Inc.* (1988), 46 Ohio App.3d 178, 181, 546 N.E.2d 457, 460.

This court has previously held that aggravation of the symptoms of an underlying pre-existing condition may, in some cases, support a claim for aggravation of the pre-existing condition itself. *Golden v. George Gradel Co.* (Feb. 17, 1989), No. L–88–091, unreported, 1989 WL 24210. In adopting this view, we developed a standard to be applied to workers' compensation claims such as the one before us. *Golden, supra,* at 14–15. This test focuses upon the "debilitating effects" either symptomatically or physiologically, proximately caused by a work-related injury. Hence, in *Golden,* this court specifically and expressly found that, in certain instances, a claimant need not establish a measurable physiological change in the underlying condition in order to demonstrate entitlement to benefits for the aggravation of a pre-existing condition. *Id.* at 15. This view has also been expressed by the Tenth District Court of Appeals. See *Boroff, supra,* at 181, 546 N.E.2d at 460, quoting *Westerviller v. Lennox Industries, Inc.* (Apr. 15, 1986), Franklin App. No. 85AP–377, unreported, at 3, 1986 WL 4651. As noted in *Golden, supra,* at 12–14, three other appellate districts have focused upon the debilitating effects or symptoms caused by a work-related injury to either bar or allow workers' compensation claims. It is clear from the foregoing discussion that the law applied to determine "aggravation" is in a state of flux. Nonetheless, the trend is to find entitlement to participation in the Workers' Compensation Fund in a case where the debilitating effects or symptoms of a pre-existing condition are established by competent medical testimony. *Golden, supra.* Accordingly, we shall apply the principles developed in *Golden* to the case before us.

In its first assignment of error, appellant asserts that the only question before the trial court was "whether Plaintiff's [appellee's] coronary artery disease was accelerated by a substantial period of time by the July 2, 1981 incident." Therefore, appellant contends that the court below erred in giving jury instructions concerning the "debilitating effect" or "disabling effect" of a symptom (angina pectoris) for which appellee was already receiving workers' compensation benefits.

Instructions to a jury should be a "plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585. However, a charge must not only be correct but should also be "adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury." *Id.*, citing *Aetna Ins. Co. v. Reed* (1878), 33 Ohio St. 283, 295. In general, any error in a charge to the jury in a civil case is not grounds for reversal unless the instruction is calculated to mislead the jury to the prejudice of the party seeking reversal. *Laverick v. Children's Hosp. Med. Ctr., Inc.* (1988), 43 Ohio App.3d 201, 202, 540 N.E.2d 305, 307. In considering whether the particular portions of the trial court's instructions were improper, the instructions must be viewed in their entirety. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003.

We have determined that the issue before the jury was whether the robbery on July 2, 1981, aggravated appellee's pre-existing coronary artery disease. Thus, the question for our consideration under appellant's first assignment of error is whether the trial court properly charged the jury in a case which was founded on a claim for aggravation of a pre-existing condition.

The disputed jury instruction given by the court below contained certain elements of the law enunciated in *Swanton, supra,* but, in addition, conformed to the tripartite test developed by this court in *Golden, supra.* The charge to the jury, in pertinent part, reads as follows:

"In this case the injury claimed is the robbery of July 2, 1981. The question here is whether the incident substantially aggravated a pre-existing condition. Substantial in this context means major or real importance or great significance and not trifling or small.

"To return a verdict for plaintiff that he is entitled to participate in the Workers' Compensation fund for the additional condition of aggravation of pre-existing coronary heart disease, he must prove by a preponderance of the evidence, again being the greater weight of the evidence, that on or about July 2, 1981, Klaus Hess received an injury during a robbery in the course of and arising out of his employment with the United Insurance Company of

America, that at the time he had a pre-existing disease known as coronary heart disease, that the robbery proximately caused a substantial acceleration or hastening of the debilitating effect of his disability by a substantial period of time.

"In considering plaintiff's claim, you are instructed that employers take their employees as they find them and assume the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal person. If an injury is a proximate cause of a disabling condition that was accelerated by a substantial period of time, plaintiff is entitled to participate independent of his original disabilities. A proximate cause is a happening or event which in a natural and continuous sequence produces the injury and without which the result would not have occurred.

"It is in the relationship of cause and effect. In relationship to this case the question of causation is did the event of the injury to plaintiff arising out of the robbery proximately cause the disabling condition that was accelerated by a substantial period of time."

In finding in *Golden* that a claimant could, under certain circumstances, be entitled to participate in the Workers' Compensation Fund for the aggravation of a pre-existing condition where symptoms were the only manifestation of the aggravation, this court concluded that the previously mentioned three-part test, as provided below, must be satisfied:

"1. The industrial injury must cause a preexisting condition of the claimant to become worse, either physiologically or symptomatically, to such a degree that the preexisting condition debilitates the claimant more after the accident than it did before the accident.

"2. The increased debilitation must be proximately caused by the industrial injury and not due to normal progression of the preexisting condition.

"3. The increased debilitation must be accelerated by a substantial period of time as a direct and proximate result of the industrial injury."

In comparing the language of the jury charge and the *Golden* standard, it can readily be seen that the trial court's instruction, on the whole, reflects that standard by concentrating on whether the work-related injury directly and proximately caused "debilitating effects" which evidenced a worsening of appellee's pre-existing coronary artery disease. Error, if any, on the part of the trial court in giving the instruction was, in light of *Schell*, prejudicial to appellee, not appellant. That is, the *Schell* court held that a work-related aggravation does not have to be of any magnitude in order to entitle the claimant to a determination of benefits. The Ohio Supreme Court in *Schell, supra,* 48 Ohio St.3d at 3, 548 N.E.2d at 922, fn. 1, suggests that

injury for this purpose consists of some real adverse effect, even if the effect is relatively slight. Thus, the term "substantial" was not properly includable in the instruction. We also observe that both the court's reference in its instructions and this court's reference in part three of the standard enunciated in *Golden* to the term "acceleration" may have been in error. *Schell* clearly distinguishes "aggravation" from "acceleration." As a result, injecting the latter term into a case premised upon a claim for aggravation of a pre-existing condition may mislead the jury and, hence, be considered error in the jury instructions. Nevertheless, in this case, any error in this regard in the jury instructions acted to the prejudice of the appellee rather than to appellant. We conclude that the trial court's charge to the jury, when considered in its entirety, fairly and clearly expressed the law applicable to this case because it reflected the claims set forth in the pleadings and the proof offered at trial. Further, the party complaining was not prejudiced by error, if any, in those instructions. Therefore, there are no grounds for reversal. Appellant's first assignment of error is found not well taken.

Appellant, in its second assignment of error, urges that the special interrogatories submitted to and answered by the jury were inconsistent with the general verdict. Due to this inconsistency, appellant asserts that the trial court erred by not entering a verdict in its favor pursuant to Civ.R. 49.

Civ.R. 49(B) requires a trial court, upon the request of any party prior to the commencement of argument, to submit written interrogatories directed at one or more of the determinative issues in a case to the jury. When one or more of the answers to those interrogatories is inconsistent with the general verdict, the trial court has three options, one of which is entering judgment which is consistent with the interrogatories. Civ.R. 49(B); *Tasin v. SIFCO Industries, Inc.* (1990), 50 Ohio St.3d 102, 105, 553 N.E.2d 257, 260. Nonetheless, "judgment should not be rendered on answers to interrogatories unless such answers are inconsistent *and irreconcilable* with the general verdict." *Id.*, quoting *Otte v. Dayton Power & Light Co.* (1988), 37 Ohio St.3d 33, 41, 523 N.E.2d 835, 842. It is incumbent upon the party challenging the general verdict to demonstrate that the answers, when considered as a whole, are inconsistent and irreconcilable. *Becker v. BancOhio Natl. Bank* (1985), 17 Ohio St.3d 158, 162–163, 17 OBR 360, 362–364, 478 N.E.2d 776, 780–781.

The interrogatories in the case before us and the jury's answers are:

"JURY INTERROGATORY NO. 1

"Do you find by a preponderance of the evidence that the debilitating effect of Plaintiff's pre-existing coronary artery disease was hastened by a substantial period of time as a direct and proximate result of the incident of July 2, 1981?

"Answer: <u>Yes</u>

"JURY INTERROGATORY NO. <u>2</u>

"Do you find by a preponderance of the evidence that the Plaintiff's coronary artery disease was accelerated by a substantial period of time as a direct and proximate result of the incident of July 2, 1981?

"Answer: <u>No</u>

"JURY INTERROGATORY NO. <u>3</u>

"Do you find by a preponderance of the evidence that the incident of July 2, 1981, brought about changes in the course of the Plaintiff's coronary artery disease that were different from the expected natural progression of that pre-existing disease?

"Answer: <u>No</u>"

Appellant contends that the answers to Interrogatories No. 2 and No. 3 are inconsistent with the general verdict. The bureau asserts that the answer to Interrogatory No. 1 is "completely irrelevant because the issue was not before the court." Again, appellant classifies this case as one founded upon the acceleration of a disabling condition which is bound to occur sooner or later by pointing out that Interrogatory No. 2 states the precise issue before the court. Appellant reasons that because Interrogatory No. 2 related to the only determinative issue in this case, the jury's response to this interrogatory compelled the trial court to enter judgment consistent with that response. Without being unduly repetitive, the issue in the case before us is whether appellee was entitled to participate in the Workers' Compensation Fund on a claim based upon the aggravation of a pre-existing coronary artery disease. The determinative issue before the jury was whether symptoms of the underlying condition could, under the circumstances of this case, constitute "aggravation" within the meaning of the statute. Appellee's pleadings, arguments and evidence all supported the theory that symptoms were sufficient. Contrarily, appellant advanced the theory that appellee had been allowed his claim for symptoms (angina pectoris) and that his claim to participate founded upon an acceleration of the underlying coronary heart disease was properly disallowed because appellee could not establish that any physiological worsening of the underlying condition was directly and proximately caused by the work-related injury. The parties propounded interrogatories consistent with their respective theory of the case. The jury's responses to those interrogatories were entirely consistent with those theories and can be reconciled to the general verdict. Obviously, the jury determined that "debilitating effects" or symptoms can constitute an aggravation of a pre-existing condition. Consequently, their response to Interrogatory No. 1

reflected this determination. As to Interrogatories Nos. 2 and 3, the jury made a factual determination that appellee had failed to prove that any physiological worsening of the coronary artery disease was caused by the 1981 robbery. If the state of the law is such that an aggravation of a pre-existing condition is any real adverse effect, inclusive of a symptom, then the interrogatories can be reconciled with the general verdict. In following *Golden,* we have concluded that an aggravation of the underlying condition can be evinced through *either* symptoms ("debilitating effects") *or* physiological changes not due to the normal progression of the disease. The test is set forth in the disjunctive. Accordingly, it is perfectly consistent under this standard for a jury to find that the aggravation was proven through evidence of worsened symptoms but not through a measurable physiological worsening. We, therefore, find appellant's second assignment of error not well taken.

In its final assignment of error, appellant asserts that the trial court erred in not granting its motion made pursuant to Civ.R. 50(B).

In granting a judgment notwithstanding the verdict, filed pursuant to Civ.R. 50(B), the trial court must determine that, in viewing all of the evidence most strongly in favor of the non-movant, there was insufficient evidence offered to permit reasonable minds to reach different conclusions. If there is substantial evidence upon which reasonable minds could differ, the motion must be denied. *Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App.3d 181, 183, 532 N.E.2d 162, 164. Under Civ.R. 50(B), the trial court may, in its discretion, either set aside the verdict and enter judgment in favor of the moving party or, in the alternative, order a new trial pursuant to Civ.R. 59(A). See, also, *Highfield v. Liberty Christian Academy* (1987), 34 Ohio App.3d 311, 315, 518 N.E.2d 592, 597. Accordingly, the denial of appellant's alternate motion for a new trial can be reversed only upon a showing of abuse of discretion. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus. Abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude in reaching its decision is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

Appellant contends, as it did in its Civ.R. 50(B) motion to the court below, that appellee failed to provide sufficient evidence, in the form of competent medical testimony, to establish that his pre-existing coronary artery disease was accelerated by a substantial period of time.

Appellant again misstates the critical issue in this case. That issue is whether the medical evidence established that appellee's pre-existing coronary

artery disease was *aggravated* by the work-related injury. This aggravation can be demonstrated by medical testimony showing that the condition worsened, either physiologically or symptomatically. *Golden, supra.* Both Dr. Horowitz and appellee testified as to the significantly increased physical and emotional manifestations which are associated with the progression of coronary artery disease that occurred immediately after the robbery and continued until the date of trial on this matter. Clearly, this testimony demonstrated the debilitating effects arising from the pre-existing coronary artery disease that had been caused by the robbery on July 2, 1981. Even Dr. Fraker admitted that the robbery caused real adverse effects which are linked to the coronary artery disease. Even in viewing the facts, disclosed through the medical evidence in a light most favorable to appellee, reasonable minds could reach different conclusions. Therefore, the trial court did not err in refusing to enter judgment in favor of appellant pursuant to Civ.R. 50(B). The court did not abuse its discretion by, in the alternative, failing to order a new trial. Appellant's third assignment of error is found not well taken.

On consideration whereof, this court finds that substantial justice was done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs assessed against appellant.

*Judgment affirmed.*

HANDWORK, P.J., ABOOD and MELVIN L. RESNICK, JJ., concur.