OPINION
{¶ 1} Defendant-appellant Honda of America Mfg., Inc. appeals the judgment the Shelby County Court of Common Pleas, which affirmed the decision of the Industrial Commission of Ohio to grant plaintiff-appellee Patricia Dunn the right to participate in the workers' compensation system for an additional allowance. For the reasons that follow, we affirm the judgment of the trial court.[1]
 {¶ 2} Dunn worked for Honda in June 1997 when she sustained an injury to her right knee in the course and scope of her employment. Dunn filed a workers' compensation claim, which described her injury as follows: "Standing on mat at work, mat is on an angle and slides forward. Standing on mat throws knee out." The Industrial Commission subsequently granted Dunn the right to participate in the workers' compensation system for a "tear of the medial meniscus of the right knee" and an "aggravation of pre-existing chondromalacia of the right knee."
 {¶ 3} In August 2001, Dunn filed a workers' compensation claim for an additional allowance for "aggravation of pre-existing osteoarthritis of the right knee." To support her claim, Dunn presented her own testimony and the deposition testimony of Dr. David K. Halley, M.D. Honda opposed Dunn's right to receive the additional allowance and presented the deposition testimony of Dr. Richard T. Sheridan, M.D., to support its position. Both parties also presented several exhibits which related to the testimony of their respective witnesses. Collectively, the testimony and exhibits discussed Dunn's osteoarthritis and whether the injury which Dunn sustained in 1997 aggravated her condition.
 {¶ 4} Based on the foregoing information, the Industrial Commission granted Dunn the right to participate in the workers' compensation system for the additional allowance. On appeal, the Shelby County Court of Common Pleas affirmed.
 {¶ 5} It is from this decision that Honda appeals and sets forth two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in finding that the weight of the evidence supported the allowance of the additional condition of osteoarthritis in Appellee's workers' compensation claim.
 {¶ 6} In its first assignment of error, Honda notes that Dr. Halley's and Dr. Sheridan's depositions established that Dunn suffered from osteoarthritis before the 1997 injury and that the injury probably did not cause a "mechanical change" to her pre-existing osteoarthritic condition. Honda, therefore, argues that the evidence does not establish that the 1997 injury actually aggravated Dunn's osteoarthritis and, consequently, concludes that the trial court erred when it affirmed the Industrial Commission's decision in this case.
 {¶ 7} A work-related aggravation of a pre-existing condition is a compensable "injury" under workers' compensation law if the aggravation has some "real adverse effect." Schell v. Globe Trucking, Inc. (1990),48 Ohio St.3d 1, 3, 548 N.E.2d 920. This is so even if the effect is only slight. Id. Notably, a claimant may prove an aggravation of a pre-existing condition by establishing symptoms that debilitated the claimant more after the accident than before the accident. Gower v.Conrad (2001), 146 Ohio App.3d 200, 204, 765 N.E.2d 905; Hess v. UnitedIns. Co. of Am. (1991), 74 Ohio App.3d 667, 674-675, 600 N.E.2d 285.
 {¶ 8} Dr. Halley testified that Dunn suffered from osteoarthritis before the 1997 injury and that the injury did, in fact, "exacerbate" Dunn's pre-existing condition, meaning the injury increased the pain and symptoms related to that pre-existing condition. Although Honda correctly notes Dr. Halley's and Dr. Sheridan's depositions established that the 1997 injury probably did not cause a "mechanical change" to Dunn's underlying osteoarthritis, such a change is not always required. This is because "[i]ncreased pain, along with an inability to work due to that pain, may be considered an `aggravation' of a pre-existing disorder, if the claimant's symptoms are supported by evidence in the record." Rumer v. Neuman Indus., Inc. (June 17, 1997), 3d Dist. No. 1-96-92, at *3; see, also, Gower, 126 Ohio App.3d at 204; Hess,74 Ohio App.3d at 674-675.[2]
 {¶ 9} Given the foregoing, we find that Dr. Halley's testimony is sufficient to establish a work-related aggravation of a pre-existing condition compensable under workers' compensation law and our controlling precedent. We must conclude, therefore, that the trial court did not err when it affirmed the Industrial Commission's decision to grant Dunn the right to participate in the workers' compensation system for the additional allowance.
 {¶ 10} Honda's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred in not finding that Appellee's disability was primarily, if not entirely, due to the natural deterioration of the arthritic condition affecting her knee and, as such, is not to be compensated under the Ohio workers' compensation law.
 {¶ 11} In its second assignment of error, Honda argues that Dr. Halley's testimony on cross-examination establishes that Dunn's disability was the primary result of natural deterioration of the pre-existing osteoarthritic condition in Dunn's right knee and that the deterioration was the reason that Dunn had her knee replaced in October 1999. Honda, thus, concludes that the trial court erred when it affirmed the Industrial Commission's decision in this case because Dunn's disability was not compensable under workers' compensation law.
 {¶ 12} R.C. 4123.01(C) provides that a compensable "injury" under workers' compensation law is "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."[3]
R.C. 4123.01(C)(2) excludes from the definition of a compensable "injury," however, any "[i]injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body."
 {¶ 13} To support its arguments and conclusion in this assignment of error, Honda points to the portion of its cross-examination of Dr. Halley that provides, in pertinent part, as follows:
 [Honda's Counsel]: Now, Doctor, arthritis is a degenerative disease; is it not?
 [Dr. Halley]: Yes.
 [Honda's Counsel]: And that means that it's a progressive disease; is that correct?
 [Dr. Halley]: Absolutely.
 [Honda's Counsel]: And it's going to get worse; is that correct?
 [Dr. Halley]: If you — yes.
 [Honda's Counsel]: Well, in Ms. Dunn's case, her arthritis that preceded the injury in June of 1997 was in a weight bearing joint; is that correct?
 [Dr. Halley]: Yes.
 [Honda's Counsel]: And where you have a degenerative change in a weight bearing joint, more likely [sic] not, it is going to get worse with the passage of time; is that correct?
 [Dr. Halley]: Yes.
 * * *
 [Honda's Counsel]: Doctor, is it fair to think of arthritis as being a part of the natural deterioration of the body?
 [Dr. Halley]: No, no, no. There are a lot of people that don't have arthritis and other people [that] do have arthritis. Other than trauma, I think there is a genetic predisposition, and once that starts, then it generally progresses in some people rapidly and other people very slowly.
 [Honda's Counsel]: Okay. Once it starts, would the arthritic changes then be considered a natural deterioration.
 [Dr. Halley]: As time goes on, yes, definitely.
 [Honda's Counsel]: Do you have an opinion as to what caused Ms. Dunn's osteoarthritis in her knee?
 [Dr. Halley]: I think that that probably is part and parcel with her body. Half of this may be increased activity, but basically a predisposition to arthritis, and I'm sure that she had it before her injury, and I've stated such.
 [Honda's Counsel]: Doctor, would her need for the knee replacement then be primarily the result of this natural deterioration of her knee?
 [Dr. Halley]: In time she would have had, I'm certain, increase [sic] in symptoms. Whether the initial force to increase the pain was at work or at home, sooner or later that would occur.
 [Honda's Counsel]: I guess what I'm saying is, then would the primary reason she needed the knee replacement be this underlying condition of —
 [Dunn's Counsel]: Objection.
 [Dr. Halley]: Of arthritis.
 [Honda's Counsel]: — of osteoarthritis?
 [Dr. Halley]: Yes, that's why we replaced a — do a knee replacement.
 {¶ 14} Notably, however, Dr. Halley also testified during his deposition, on direct-examination, as follows:
 [Dunn's Counsel]: Doctor, based upon your education, your training, your experience, your examination and treatment of Ms. Dunn, do you have an opinion within a reasonable degree of medical certainty as to whether Ms. Dunn has the condition of osteoarthritis of the right knee?
 [Dr. Halley]: Oh, no doubt she has osteoarthritis of the right knee.
 [Dunn's Counsel]: Okay. And, again, based upon your education, your experience, your examination and treatment of Ms. Dunn, do you have an opinion within a reasonable degree of medical certainty as to whether Ms. Dunn's work accident of 6-9-97 and the injuries from that accident caused an aggravation of her preexisting osteoarthritis of the right knee?
 [Honda's Counsel]: Object.
 [Dr. Halley]: Yes.
 [Dunn's Counsel]: And what is that opinion?
 [Honda's Counsel]: Object.
 [Dr. Halley]: I believe it did.
 [Dunn's Counsel]: And what is the basis for your opinion?
 [Dr. Halley]: It [the 1997 injury] increased her symptom complex to warrant having to finally undergo surgery * * *.
 {¶ 15} In sum, Dr. Halley testified that osteoarthritis is a degenerative, progressive disease; that once osteoarthritis starts, arthritic changes may be considered natural deterioration; that Dunn's osteoarthritis, and the related symptoms, would in fact worsen with time; and that the primary reason that Dunn needed to have her knee replaced was the underlying condition of osteoarthritis. Dr. Halley also testified, however, that the 1997 injury aggravated the pre-existing osteoarthritic condition by "increase[ing] [Dunn's] symptom complex to warrant having to finally undergo surgery * * *."
 {¶ 16} Given Dr. Halley's discrepant statements, we cannot say that the deposition testimony as a whole establishes that the disability at issue, the exacerbated pain and symptoms related to Dunn's pre-existing osteoarthritis, was caused primarily by natural deterioration. Accordingly, we conclude, as did the trial court, that R.C.4123.01(C)(2) does not apply under the particular facts of this case and hold that the trial court did not err when it affirmed the Industrial Commission's decision to grant Dunn the right to participate in the workers' compensation system for the additional allowance.
 {¶ 17} Honda's second assignment of error is, therefore, also overruled.
 {¶ 18} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 BRYANT, P.J., and SHAW, J., concur.
[1] The Bureau of Workers' Compensation Administrator was named as a party in this case but did not otherwise participate in this appeal.
[2] Honda notes Am. Sub. S.B. No. 7 amended R.C. 4123.01(C) in June 2006 to clarify when the aggravation of a pre-existing condition is a compensable "injury" under workers' compensation law. See R.C.4123.01(C)(4). But Honda concedes that Dunn's claim arose before the effective date of the amendment, and that Am. Sub. S.B. No. 7 is inapplicable to the particular facts of this case.
[3] As we stated in our analysis of Honda's first assignment of error, a work-related aggravation of a pre-existing condition may also constitute a compensable "injury" under workers' compensation law. SeeSchell, 48 Ohio St.3d at 3-4; Rumer at *3.