**SHAFFER, Appellant,**

v.

**CANTON CHRISTIAN HOME, INC. et al., Appellees.**

</div>

[Cite as *Shaffer v. Canton Christian Home, Inc.,* 171 Ohio App.3d 294, 2007-Ohio-2002.]

<div align="center">

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2006CA0049.

Decided April 23, 2007.

</div>

A. James Tsangeos, for appellant.

Brian R. Mertes, for appellee Canton Christian Home.

HOFFMAN, Judge.

{¶ 1} Plaintiff-appellant, Leona G. Shaffer, appeals the January 23, 2006 judgment entry of the Stark County Court of Common Pleas entering judgment in favor of defendants-appellees Canton Christian Home and the Ohio Bureau of Workers' Compensation pursuant to a jury verdict.

### Statement of the Facts and Case

{¶ 2} On October 21, 2003, appellant worked as an employee of Canton Christian Home, Inc. During the course of her employment, appellant sustained an industrial injury, and the Bureau of Workers' Compensation allowed appellant's claim for the conditions of sprain thoracic region, sprain lumbar region, and sprain of the neck.

{¶ 3} Appellant then filed a request to have her claim additionally allowed for the conditions of C5–6 and C6–7 disc herniations, aggravation of pre-existing T12–L1, L4–5, and L5–S1 disc herniations, and aggravation of pre-existing degenerative disc disease at T12–L1, L4–5, and L5–S1. On June 18, 2004, the district hearing officer issued an order allowing the further claims. Appellee Canton Christian Home filed an appeal from the district hearing officer's order. On August 5, 2004, the staff hearing officer issued an order denying the further allowances. Appellant appealed the staff hearing officer's order to the Industrial Commission of Ohio. On August 18, 2004, the Industrial Commission refused the appeal.

{¶ 4} On June 3, 2005, appellant filed her complaint in the trial court to further participate in the Workers' Compensation Fund. The matter proceeded to a jury trial before Magistrate Dean Dahl by stipulation of the parties on January 12, 2006. The jury returned a verdict in favor of appellees. On January 23, 2006, the trial court entered judgment in appellees' favor pursuant to the jury's verdict.

{¶ 5} Appellant now appeals, assigning as error:

{¶ 6} "I. The trial court erred by denying plaintiff/appellant the right to introduce medical testimony on her inability to function or work and her need for surgery to demonstrate how she aggravated her pre-existing conditions resulting from her industry injury on October 21, 2003."

{¶ 7} In the single assignment of error, appellant asserts that the trial court erred in excluding evidence of appellant's medical inability to work and her need for surgery to demonstrate an aggravation of her pre-existing conditions.

{¶ 8} We are unpersuaded by appellant's argument that the trial court erred in not allowing the testimony relative to her need for surgery on her neck. The anticipated neck surgery at issue did not involve the conditions appellant now claims were aggravations. Rather, the surgery concerned only the two neck herniations that were claimed to be directly caused by the injury. Appellant's assignment of error does not reach the claims for new injury to her neck. Appellant did not introduce testimony relative to a need for surgery as to her aggravated back conditions.

{¶ 9} Accordingly, we will proceed to address appellant's argument relative to the trial court's exclusion of evidence regarding her inability to work.

{¶ 10} Aggravation of a pre-existing condition qualifies as an "injury" under Ohio's workers compensation system. *Ackerman v. Indus. Comm.* (1936), 131 Ohio St. 371, 6 O.O. 85, 3 N.E.2d 44. An aggravation need not be "substantial" to qualify an employee for coverage. *Schell v. Globe Trucking, Inc.* (1990), 48 Ohio St.3d 1, 548 N.E.2d 920. Rather, aggravation of the symptoms of the underlying pre-existing condition supports a claim for aggravation of the pre-existing condition itself. *Gower v. Conrad* (2001), 146 Ohio App.3d 200, 765 N.E.2d 905. " 'The key is whether the aggravation * * * had an impact on a person's bodily functions or affected an *individual's ability to function or work.*' " (Emphasis added.) Id., quoting *Boroff v. McDonald's Restaurants of Ohio, Inc.* (1988), 46 Ohio App.3d 178, 181, 546 N.E.2d 457. Aggravation of a pre-existing condition can be demonstrated " 'through either symptoms, ("debilitating effects"), or physiological changes not due to the normal progression of the [condition].' " Id., quoting *Hess v. United Ins. Co. of Am.* (1991), 74 Ohio App.3d 667, 679, 600 N.E.2d 285.

{¶ 11} At trial, appellant introduced the deposition testimony of Dr. Mark R. Grubb. Dr. Grubb testified:

{¶ 12} "Q. Doctor, at this point, I'd like to ask you for your opinions and, first of all, ask in your opinion, Doctor, based on reasonable orthopedic certainty and probability do you believe that the herniations that you've identified in the cervical spine were a result of Leona's industrial injury on October 21, 2003?

{¶ 13} "First of all, do you have an opinion?

{¶ 14} "Mr. Aronoff: Objection.

{¶ 15} "A. Yes.

{¶ 16} "Q. And what is your opinion?

{¶ 17} "Mr. Aronoff: Objection.

{¶ 18} "A.   They were causally related.

{¶ 19} "Q.   And secondly, Doctor, do you have an opinion, again, within reasonable orthopedic certainty and probability as to whether or not the herniations at the levels of T12–L1, L4–5, and L5–S1 were aggravated as a result of her industrial injury?

{¶ 20} "Mr. Aronoff: Objection.

{¶ 21} "A.   Yes.

{¶ 22} "Q.   And what is your opinion?

{¶ 23} "Mr. Aronoff: Objection.

{¶ 24} "A.   That they were, indeed, aggravated by the injury suffered.

{¶ 25} "Q.   And what is the basis for your opinion?

{¶ 26} "Mr. Aronoff: Objection.

{¶ 27} "A.   Basis of my opinion is primarily, predominantly the initial office visit including the history, physical examination, as well as review of the diagnostic tests.

{¶ 28} "Q.   And is that the, also the basis for your early opinion on the herniations in the neck?

{¶ 29} "A.   Yes.

{¶ 30} "Q.   Do you have an opinion as to whether or not the degenerative disc disease that was identified in the MRI of the lumbosacral spine was aggravated as a result of the mechanism of injury leading up to her Workers' Comp. claim on October 21, 2003?

{¶ 31} "Mr. Aronoff: Objection.

{¶ 32} "A.   Yes.

{¶ 33} "Q.   And what is your opinion?

{¶ 34} "Mr. Aronoff: Objection.

{¶ 35} "A.   That, indeed, the degenerative disc disease was aggravated by the work injury.

{¶ 36} "Q.   I want to show you what's been marked as Plaintiff's Exhibit 6 and ask you if, if those are disability statements that you wrote for Leona Shaffer.

{¶ 37} "Mr. Aronoff: Objection.   Move to strike anything to disability which isn't an issue in this lawsuit.

{¶ 38} "A.   Okay. Yes.

{¶ 39} "Q.   Are those?   Okay. And do you—can you refer to—what period of time was she taken off work?

{¶ 40} "Mr. Aronoff:  Objection.

{¶ 41} "A.   From 10/21/03 to 2000—February 1st, 2004.

{¶ 42} "Q.   And I believe there's a second page to that exhibit.   Was the disability then extended to an estimated date of March 1, 2004?

{¶ 43} "A.   Yes.

{¶ 44} "Mr. Aronoff:  Objection.

{¶ 45} "By Mr. Tsangeos:

{¶ 46} "Q.   Is the fact that someone is temporarily disabled as a result of an injury, is that something that you take into consideration or a factor that you consider in rendering an opinion on whether or not someone has suffered either a pre-existing, an aggravation to a pre-existing herniation or an aggravation to pre-existing degenerative disc disease?

{¶ 47} "Mr. Aronoff:  Objection.

{¶ 48} "A.   I'm not, I'm not sure.—

{¶ 49} "Q.   Okay.

{¶ 50} "A.   —I'm understanding.

{¶ 51} "Q.   Let me try it a different way.   If someone suffers an injury at work and then later is taken off work because they're unable to perform the same duties they were before, is that period of temporary disability something that you can—you take into consideration to determine whether or not they aggravated pre-existing conditions?

{¶ 52} "Mr. Aronoff:  Objection.

{¶ 53} "A.   Yes.

{¶ 54} "Q.   And how is that relevant or how is that important in determining whether or not somebody has aggravated either a pre-existing herniation or pre-existing degenerative disc disease?

{¶ 55} "Mr. Aronoff:  I'll just note a continuing objection to this line.

{¶ 56} "A.   Well, predominantly that the symptoms have been raised to such a point that the patient is un, unable to perform their duties at work."

{¶ 57} The following exchange then occurred at trial with regard to the testimony:

{¶ 58} "Mr. Tsangeos: Thank you, Your Honor.   The issue that the Court is addressing right now is whether or not Doctor Grubb can testify about the

claimant's inability to return to her former position of employment due to what he believes are the further allowed medical conditions in this claim.

{¶ 59} "Doctor Grubb has testified is that you can aggravate preexisting degenerative disk disease. All the Doctors in this case have admitted that she had degenerative disk disease in her back.

{¶ 60} "However, the testimony will be that that preexisting degenerative disk disease never stopped her from working, never prevented her from doing her job.

{¶ 61} "It wasn't until after this industrial injury that she is now unable to return to work.

{¶ 62} "So something has happened between before this industrial injury and after that has prevented her from going back to work. It is not just the degenerative disk disease.

{¶ 63} "Doctor Grubb has testified that factors he considers to show aggravations of preexisting conditions are complaints of symptoms and the inability to return to her former position of employment.

{¶ 64} "If this Court is going to allow Doctor Grubb to testify to this jury that, yes, the fact that she can't go back to work is a factor that I take into consideration, then I don't see why the Doctor can't go one step further and say yes, as a matter of fact I found she has been unable to return to her former position of employment due to the aggravation.

{¶ 65} "So I get the sense that the reason the Court is not going to do it is because it is relying on the fact it feels that this evidence is being presented to show extent of disability.

{¶ 66} "That's not why we are offering the evidence, and extent of disability relates to either a permanent-partial disability; and we are not presenting the evidence to show that, or evidence of being unable to return to work refers to collecting temporary-total compensation and we are not presenting the evidence in any way to suggest that she should be paid for the time she is off.

{¶ 67} "That we understand falls within the purview of the Industrial Commission, but we are offering the evidence to show that she has had an aggravation to the extent that she can not go back to work and doing the things she had done before and the Doctors are disabling her for that reason.

{¶ 68} "While we are on it, the Doctors will also testify to surgery; and the Court has also ruled that we can't mention surgery as part of this case, but the Doctors have also said that changes in treatment will also be a factor that can be taken into consideration when determining aggravations.

{¶ 69} "I would just like to note an exception to the court's ruling and preserve my right.

{¶ 70} "The Court: Mr. Aronoff.

{¶ 71} "Mr. Aronoff: The Court has already ruled. We have already discussed it.

{¶ 72} "The fact of the matter is that you know, the treatment this person may or may not have is not relevant to this case.

{¶ 73} "The Court: Again to the extent that the argument shows extent of injury, I am sustaining the objection.

{¶ 74} "However, to the extent that it shows that it is a matter that the Doctor used in determining his diagnosis, objection overruled."

{¶ 75} The trial court sustained appellees' objections in the deposition transcript excluding Dr. Grubb's testimony relative to appellant's inability to return to work.

{¶ 76} Appellant argues the trial court erred in excluding the testimony as the evidence is a factor in determining whether she suffered an aggravation of her pre-existing herniation or degenerative disc disease.

{¶ 77} R.C. 4123.512 divests the trial court of subject matter jurisdiction relative to an appeal on the issue of extent of disability. However, appellant did not appeal the issue of extent of disability. Rather, appellant sought to introduce evidence relative to her symptoms, treatment, and inability to work related to aggravation of the injury sustained on October 21, 2003. Therefore, the evidence is relevant and probative on the issue of whether appellant aggravated her pre-existing conditions.

{¶ 78} Appellant also introduced the testimony of Dr. Stan Anderson, her family practice physician. Dr. Anderson testified:

{¶ 79} "Q. Can someone aggravate preexisting degenerative disk disease?

{¶ 80} "A. Absolutely.

{¶ 81} "Q. What factors do you look at to determine whether or not a patient has aggravated or worsened their preexisting herniations or degenerative disk disease?

{¶ 82} "A. You look at symptoms. Again let me give another analogy. I am going to use an analogy of a spur because in a sense arthritis and spurs are somewhat similar.

{¶ 83} "But if you have a heel spur and that spur on your heel really bothers you so every time you put your foot down you get that horrible pain right on the heel, the treatment for it is to try to rest the heel, to try to give it some ice, to try to get the inflammatory response to go down.

{¶ 84} "So that when somebody has a heel spur, it is the resolution of symptoms, not the resolution of the spur that indicates success.

{¶ 85} "So that when a person who has a spur, whether it is on the spine or whether it is in the heel, ends up feeling better, we don't say, oh, your degenerative arthritis went away.

{¶ 86} "What we say is, is that the inflammation that is associated with the abnormality has cleared so that way in which we try to approach this is we try to approach it to say what do we need to do to decrease the inflammation to decrease symptoms.

{¶ 87} "Q. Do you look at any other factors besides symptoms to determine if there has been an aggravation?

{¶ 88} "A. Symptoms are the critical thing. Obviously if somebody has no symptoms but they have no use, so symptom is I am telling you. A sign is a physical examination component.

{¶ 89} "So we look at, in medicine we call it symptoms and signs or signs and symptoms. So the sign would be any testing that is done in the office.

{¶ 90} "So the answer is you look at the history, what they are telling you, then you look at the testing, what have I been able to find based on my examination. What about changes in treatment, can that be a factor to determine that somebody has suffered an aggravation?

{¶ 91} "Mr. Aronoff: Objection.

{¶ 92} "The Court: Overruled. I believe we know the parameters that we are dealing with here.

{¶ 93} " * * *

{¶ 94} "Q. Have you seen Leona professionally, say, over the last year?

{¶ 95} "A. Yes, I have.

{¶ 96} "Q. Is she still having pain and problems in her upper extremity?

{¶ 97} "A. Definitely.

{¶ 98} "Q. Still having problems with the neck?

{¶ 99} "A. Yes.

{¶ 100} "Q. Is she still having pain and problems with her low back and complaints of pain going down the leg?

{¶ 101} "A. It is so intense for her that she has described for me that she is unable to lift up grandchildren. She is having a hard time doing normal functions. Her symptoms are completely explained best by herniated disks and joint and degenerative disk disease.

{¶ 102} "Q. But you told us, Doctor, haven't you, that she had this degenerative disk disease and she had herniation back in 1996, didn't you?

{¶ 103} "A. Right; yes, I did.

{¶ 104} "Q. As far as you were aware, was she still able to continue to work and do her job functions from '96 up to the date of her injury on October 21 of 2003?

{¶ 105} "A. That's correct.

{¶ 106} "Q. Is she able to go back to work?

{¶ 107} "A. No, no. Any lifting causes her incredibly intense pain."

{¶ 108} Dr. Anderson then opined appellant's symptoms were caused by an aggravation of her pre-existing conditions.

{¶ 109} Dr. Anderson's testimony did not specifically state that he considered her inability to work as a factor in determining whether she aggravated her pre-existing underlying condition. Appellees cite appellant's own testimony relative to her inability to work. However, we find there is a significant difference between appellant's fact testimony as a lay witness and that of a medical expert offering expert opinion as to symptoms or signs used in diagnosing whether there has been an aggravation of pre-existing conditions.

{¶ 110} Upon review of the record, we find that appellant was materially prejudiced by the trial court's exclusion of Dr. Grubb's testimony relative to appellant's inability to work as a consideration in formulating his expert opinion that appellant had suffered an aggravation of her pre-existing condition. Appellant experienced symptoms consistent with an aggravation of her pre-existing condition. The symptoms impacted her ability to work, which should have been considered by the jury in determining whether appellant suffered an aggravation of her pre-existing conditions. The trial court improperly excluded the expert testimony offered in support of appellant's claim.

{¶ 111} The January 23, 2006 judgment entry of the Stark County Court of Common Pleas is affirmed as to appellant's claims for nonaggravation conditions, but reversed as to appellant's aggravation claims, and the matter is remanded for further proceedings consistent with the law and this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

GWIN, P.J., and DELANEY, J., concur.