[Cite as *Pflanz v. Pilkington LOF*, 2011-Ohio-2670.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

THOMAS PFLANZ,                     :          APPEAL NO. C-100574
                                              TRIAL NO. A-0805269
    Plaintiff-Appellee,        :

 vs.                               :          *O P I N I O N.*

PILKINGTON LOF,                    :

    Defendant-Appellant.       :

                                   :

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed from Is:  Affirmed

Date of Judgment Entry on Appeal:  June 3, 2011

*Gerald Grubbs*, for Plaintiff-Appellee,

*Robert M. Robenalt* and *Schottenstein Zox & Dunn Co., L.P.A.*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}    Defendant-appellant, Pilkington LOF, appeals the judgment of the Hamilton County Court of Common Pleas allowing plaintiff-appellee, Thomas Pflanz, to participate in the workers' compensation fund for the substantial aggravation of a preexisting medical condition.  The judgment was entered following a bench trial.

### Pflanz's Back Problems and His Workplace Injuries

{¶2}    Pflanz began experiencing back pain in 1983.   In 1989, he was working in a warehouse.  While moving a large object, he severely injured his back. He sought treatment with Dr. Thomas Sullivan, D.C., a chiropractor.  Dr. Sullivan referred Pflanz to a surgeon, who performed a lumbar laminectomy.

{¶3}    In 2001, Pflanz again went to Dr. Sullivan complaining of low back pain and weakness in his legs.  Dr. Sullivan ordered a magnetic resonance imaging scan (MRI).   Dr. Sullivan testified that the MRI had revealed a lumbar disc displacement at L-4/L-5.

{¶4}    In 2007, Pflanz began working at Pilkington.  One of his duties was to unload large panes of glass from delivery trucks.  On July 5, 2007, Pflanz was lifting a pane of glass when he felt a "snap" and experienced what he termed an "electric shock" in his back.

{¶5}    Pflanz went to Dr. Sullivan, who ordered another MRI.   In Dr. Sullivan's opinion, the MRI indicated that the July 5, 2007, incident had substantially aggravated the preexisting lumbar disc displacement and preexisting facet-joint osteoarthropathy.   In addition to the MRI, Dr. Sullivan based his diagnosis on range-of-motion tests and on other diagnostic tools he had administered himself.

{¶6}    Pflanz went to Dr. Sullivan for further chiropractic treatments through August 24, 2007.  He did not receive further treatment from Dr. Sullivan

until December 24, 2007, when he reported that he had injured himself putting up his Christmas tree. Pflanz explained that he had not sought treatment in the interim because he could not afford it.

{¶7} Dr. Steven Wunder, M.D, testified on behalf of Pilkington. Wunder examined Pflanz and reviewed the MRIs and other records relating to Pflanz's medical history. Dr. Wunder expressed the opinion that Pflanz merely suffered from chronic back pain. Dr. Wunder concluded that the chronic pain had been exacerbated by the July 5, 2007, incident, which had caused what Dr. Wunder characterized as a sprain or strain. He based that opinion in part on Pflanz's ongoing complaints of back pain since the 1980s and on the fact that Pflanz had ceased treatment between August 24, 2007, and December 24, 2007, with the implication being that the sprain or strain had healed.

{¶8} The Industrial Commission allowed Pflanz to participate in the fund for the substantial aggravation of the preexisting disc displacement and facet-joint osteoarthropathy. The trial court upheld the determination of the Industrial Commission, and Pilkington has appealed.

**The Trial Court's Construction of "Substantial Aggravation"**

{¶9} We begin with the third and final assignment of error, in which Pilkington contends that the trial court did not apply the correct "substantial aggravation" standard in concluding that Pflanz had suffered a compensable injury.

{¶10} First, we must identify our standard of review. In an appeal under R.C. 4123.512 from an order of the Industrial Commission, the trial court reviews de novo the issue of whether the claimant can participate in the worker's compensation fund.[1] This court reviews the decision of the trial court under a manifest-weight-of-

---

[1] *Krull v. Ryan,* 1st Dist. No. C-100019, 2010-Ohio-4422, ¶9.

the-evidence standard, and we will not reverse the trial court's judgment if it is supported by some competent, credible evidence.[2]

{¶11} To participate in Ohio's workers' compensation fund, a claimant must establish an "injury" as defined by R.C. 4123.01(C). This statute provides that an injury includes "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."[3]

{¶12} The subdivisions of R.C. 4123.01(C) qualify the definition of a compensable injury. R.C. 4123.01(C)(4) provides that an injury does not include "[a] condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury. Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation."

{¶13} The legislature added subdivision (C)(4) as part of Am.Sub.S.B. No. 7 ("Senate Bill 7") in 2006. Before this amendment to the definition of a compensable injury, the Ohio Supreme Court had held in *Schell v. Globe Trucking, Inc.*[4] that "[a] workers' compensation claimant who has proven a work-related aggravation of a pre-existing condition is not required to prove that the aggravation is substantial in order to be entitled to a determination of the extent of his participation in the State Insurance Fund."[5]

---

[2] Id.
[3] R.C. 4123.01(C).
[4] (1990), 48 Ohio St.3d 1, 548 N.E.2d 920.
[5] Id., syllabus.

{¶14} The *Schell* court based its holding on the broad language used by the General Assembly in defining a compensable injury. The court stated that "an aggravation of a pre-existing condition having some real adverse effect, even if that effect was relatively slight, would be within our understanding of the definition of 'injury' * * *."[6] The court reasoned that to read R.C. 4123.01(C), as it existed at the time, "[t]o require that an injury, in the form of an aggravation of a pre-existing condition, must be of a specified magnitude would work a change in the statutory scheme that would best be left to the legislature."[7]

{¶15} Further, before Senate Bill 7, Ohio appellate courts had held that, "in certain instances, a claimant need not establish a measurable physiological change in the underlying condition in order to demonstrate entitlement to benefits for the aggravation of a preexisting condition."[8] Thus, the aggravation of the underlying condition "[could] be evinced through *either* symptoms ('debilitating effects') *or* physiological changes not due to the normal progression of the disease."[9] In other words, a trier of fact could find "an aggravation through evidence of worsened symptoms even though objective medical testing [did] not otherwise indicate a worsening condition."[10]

### The Meaning of "Substantial Aggravation"

{¶16} While the General Assembly in Senate Bill 7 used the term "substantial" to define the extent of the aggravation required to participate in the workers' compensation fund, it did not expressly define the term "substantial" in the statute.

{¶17} "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the

---

[6] Id. at fn 1.
[7] Id. at 3, 548 N.E.2d 920.
[8] *Hess v. United Ins. Co. of America* (1991), 74 Ohio App.3d 667, 674, 600 N.E.2d 285, citing *Golden v. George Gradel Co.* (Feb. 17, 1989), 6th Dist. No. L-88-091.
[9] *Hess,* supra, at 679, 600 N.E.2d 285 (emphasis in original).
[10] *Gower v. Conrad* (2001), 146 Ohio App.3d 200, 204, 765 N.E.2d 905.

statute nor subtractions therefrom."[11]  The word "substantial" has multiple meanings, including "considerable in amount, value, or the like" and "[f]irmly established; solidly based."[12]  But we find no ambiguity in the statute despite these distinct meanings, because the statutory language indicates that the claimant must demonstrate "substantial" aggravation in both senses of the word.

{¶18}   R.C. 4123.01(C)(4) first excepts from the definition of a compensable injury "[a] condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury."  The statute then provides that "[s]uch a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results."  The statute further states that subjective complaints may also be evidence of "such a substantial aggravation" but that subjective complaints without the specified objective medical evidence "are insufficient to substantiate a substantial aggravation."  Thus, to be compensable, the aggravation of a preexisting condition must be substantial both in the sense of being considerable and in the sense of being firmly established through the presentation of objective evidence.

### Pflanz's Injury and Substantial Aggravation

{¶19}   In this case, Pilkington has failed to demonstrate that the trial court applied the wrong standard regarding substantial aggravation.  According to Pilkington, the trial court relied solely on the fact that Pflanz had not sought treatment between 2001 and 2007 in arriving at the conclusion that Pflanz's previous back conditions had resolved and that the 2007 incident had substantially aggravated those conditions.

---

[11] *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶14, superseded by statute on other grounds.
[12] Seventh and ninth definitions of "substantial" in Webster's Second New International Dictionary (1959) 2514.

{¶20}   But Pilkington ignores the objective and subjective evidence adduced by Pflanz in support of his claim.  Pflanz provided ample evidence that the July 5, 2007, workplace injury had substantially aggravated his preexisting back conditions. Dr. Sullivan established, through the MRIs and other test results, that Pflanz's lumbar disc displacement and osteoarthropathy had been made substantially worse by the 2007 incident.  The trial court accepted that evidence and applied the proper statutory standard.

{¶21}   In arguing that the trial court applied an improper standard, Pilkington essentially contends that the trial court failed to properly consider the testimony of Dr. Wunder.  Pilkington emphasizes Dr. Wunder's opinion that Pflanz had merely suffered from chronic back pain that had been temporarily aggravated by the July 2007 incident.  Thus, Pilkington claims that the evidence did not support the trial court's finding of a substantial aggravation.

{¶22}   We find no merit in Pilkington's argument.  The trial court explicitly considered Dr. Wunder's opinion in its written decision, but it simply found Dr. Sullivan's testimony to have been more compelling.  Such a conclusion did not mean that the trial court failed to apply the proper standard.  Because the trial court's judgment was supported by competent, credible evidence, we overrule the third assignment of error.

### Reliability of Pflanz's Expert

{¶23}   In its first and second assignments of error, Pilkington argues that the trial court erred in relying on the expert testimony of Dr. Sullivan because that testimony was allegedly contradictory.  We address the assignments together.

{¶24}   In *State ex rel. Eberhardt v. Flxible Corp.*,[13] the Supreme Court of Ohio discussed the inherent deficiency of equivocal or contradictory opinions.  The *Eberhardt* court stated that "equivocation occurs when a doctor repudiates an earlier

---

[13] (1994), 70 Ohio St.3d 649, 640 N.E.2d 815.

opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement."[14] Equivocal statements "reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable."[15]

{¶25} In this case, we find no deficiency in Dr. Sullivan's testimony. Throughout the proceedings before the trial court, Dr. Sullivan maintained that the July 2007 injury had substantially aggravated the lumbar displacement at L-4/L-5 and that the incident had substantially aggravated the osteoarthropathy in the same area.

{¶26} But according to Pilkington, Dr. Sullivan also diagnosed the conditions as new injuries rather than as an aggravation of previous conditions. Pilkington bases its claim of equivocation or inconsistency largely on testimony taken in isolation. To support its claim, Pilkington quotes Dr. Sullivan's testimony that Pflanz's condition was "directly related to the mechanism of injury [Pflanz] described from his work injury." But in context, it is evident that he was referring to the *substantial aggravation* being related to the work injury. In other words, he was establishing that the 2007 incident had directly caused the substantial aggravation, not that the incident had directly caused a new injury. And in any event, this court has held that the aggravation of a preexisting injury is not a separate injury, but merely a different theory of causation.[16]

{¶27} Pilkington also bases its claim of equivocation or inconsistency on Dr. Sullivan's concession that his opinion regarding "substantial aggravation" had not been an explicit part of his "working diagnosis" at the outset of his evaluation of Pflanz's condition. But Dr. Sullivan emphasized that he had adduced evidence of substantial aggravation before the Industrial Commission and that his diagnosis at

---

[14] Id. at 657, 640 N.E.2d 815.
[15] Id.
[16] See *Starkey v. Builders Firstsource Ohio Valley, LLC.,* 187 Ohio App.3d 199, 2010-Ohio-1571, 931 N.E.2d 633, discretionary appeal allowed, 126 Ohio St.3d 1554, 2010-Ohio-3855, 932 N.E.2d 338.

the time of his deposition testimony remained the same. We fail to see how the timing of the diagnosis was fatal to Dr. Sullivan's credibility, especially in light of the trial court's de novo review of the case.

{¶28} Finally, we find no merit in Pilkington's argument that the trial court's judgment ran afoul of the Supreme Court of Ohio's decision in *Ward v. Kroger Co.*[17] In *Ward,* the court held that a claimant in an appeal under R.C. 4123.512 may seek to participate in the workers' compensation fund only for those conditions addressed in the administrative order from which the appeal was taken.[18] Here, the conditions allowed by the trial court were the same as those addressed in the administrative order, and we accordingly overrule the first and second assignments of error.

### Conclusion

{¶29} We affirm the judgment of the trial court.

**SUNDERMANN** and **CUNNINGHAM, JJ.**, concur.

Please Note:

The court has recorded its own entry on the date of the release of this opinion.

---

[17] 106 Ohio St.3d 35, 2005-Ohio-3560, 830 N.E.2d 1155.
[18] Id., syllabus. See, also, *Starkey,* supra.