[Cite as *Bell v. Bur. of Workers' Comp.*, 2012-Ohio-1364.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT BELL, | : | APPEAL NO. C-110166 |
| | | TRIAL NO. A-1003052 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I ON.* |
| ADMINISTRATOR, OHIO BUREAU OF WORKERS' COMPENSATION, | : | |
| | : | |
| and | : | |
| MIAMI TOWNSHIP TRUSTEES, | : | |
| Defendants-Appellees. | : | |
| | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed from is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: March 30, 2012

*McKenzie & Snyder LLP, Andrew R. Tobergte* and *Kyle B. McKenzie*, for Plaintiff-Appellant,

*Michael DeWine*, Attorney General of Ohio, and *Jose E. Martinez*, Assistant Attorney General, for Defendant-Appellee Administrator, Ohio Bureau of Workers' Compensation.

Please note: This case has been removed from the accelerated calendar.

Per Curiam.

{¶1}     Plaintiff-appellant Robert Bell appeals from the judgment of the Hamilton County Court of Common Pleas denying him, after a bench trial, the right to participate in the Ohio Workers' Compensation Fund for the additional conditions of radiculopathy at L4-5 and L5-S1.  Because we determine that the trial court's judgment is against the manifest weight of the evidence, we reverse.

## I. Background Facts

{¶2}     Bell, a Miami Township medical technician, suffered a work-related injury in February 2008.  As a result, he was approved to participate in the workers' compensation fund for the condition of lumbosacral sprain.  In October 2009, Bell moved to amend his claim to allow the additional conditions of lumbar radiculopathy at L4-5 and L5-S1 arising out of the same work-place injury.

{¶3}     A district hearing officer denied Bell's claim and that denial was affirmed by a staff hearing officer.  The Industrial Commission refused Bell's appeal.  Bell then appealed to the common pleas court under R.C. 4123.512, requesting the right to participate for the additional conditions and costs, including attorney fees.  Defendant-appellee administrator of workers' compensation ("the administrator") and the Miami Township Trustees, Bell's employer, were named as parties to the appeal.  Only the administrator actively defended the claim.

{¶4}     At trial, Bell explained that while on duty in February 2008, he was called to a home where a man weighing over 300 pounds needed assistance.  He had grabbed the patient from the back and had attempted to lift him with the aid of three other individuals.  When the others failed to hold on, Bell held the patient, on his

own, for 25 to 30 seconds. During this time, Bell experienced a "pop" in his low back accompanied by "unreal pain" that travelled down his legs.

{¶5} The emergency room physician diagnosed Bell with "lumbar strain" and gave him injections as well as a prescription to alleviate pain in the low back area. Bell attended several follow up visits with an emergency room doctor and with Dr. Matthew Birkle at the hospital's Medicenter. Birkle ordered an x-ray, which did not revealed any conditions. Birkle noted after a February 19, 2008 exam that Bell "still has stiffness in the lumbar region and radiating pain to bilateral thighs, described as a tingling sensation or burning sensation."

{¶6} Next Bell was examined by Dr. John Brannan at Beacon Orthopaedics and Sports Medicine. Dr. Brannan had noted Bell's complaint of pain across the low back at his first office visit and had recommended a continuation of pain medication and physical therapy. But Dr. Brannan concluded after an examination in early March 2008 that Bell's lumbar strain had resolved, and he released Bell to return to work with unrestricted duties.

{¶7} According to Bell, his low back pain and radiating leg pain continued and interfered with his work duties. In August 2008, he complained about this pain to Dean Rottinghaus, a chiropractic doctor. Dr. Rottinghaus had previously provided Bell on-going spine manipulation to treat a stiff neck. That treatment had not included treatment to the low back area, although in 2005 Bell had suffered a low back strain during a training drill. The 2005 work-place injury had been approved for the condition of "lumbar sprain/strain" and Bell had no resulting radicular pain.

{¶8} After examining Bell in August 2008, Dr. Rottinghaus diagnosed a sprain of the sacroiliac region. Over the course of a year, Dr. Rottinghaus treated Bell for worsening pain and numbness in his left leg. Dr. Rottinghaus performed

additional clinical examinations that indicated significant problems in Bell's low back. These problems included a radiculopathy, which Dr. Rottinghaus described as pain radiating down Bell's left leg due to compression on the nerves in the lumbar spine area and a possible disc condition.

{¶9}     In addition to the clinical exams, Dr. Rottinghaus ordered a series of magnetic resonance imaging ("MRI") scans that demonstrated that Bell's discs at L2-L3 and L-3-L4 had dried out at an abnormal level and that Bell had mild disc bulging at L4-L-5, potential causes of compression on spinal nerves.

{¶10}     In June 2009, Bell's left leg gave out while he was walking. Based on Bell's history, the examination findings, and the MRI scan results, Dr. Rottinghaus referred Bell to Dr. Ayse Robinson for an electromyography ("EMG"). An EMG is a nerve conduction study that determines if and where a nerve is affected and is most commonly used to diagnose a radiculopathy. Unlike an MRI scan, which can demonstrate the cause of the radiculopathy, the result of the EMG test can specifically "pin point" a radiculopathy.

{¶11}     Dr. Robinson found based on the EMG results that Bell had nerve compression on the left side at L5 and S1 nerve roots and also mildly at L4 nerve root. With these results, Dr. Rottinghaus confirmed that Bell was suffering from radiculopathy due to the compression caused by the abnormalities revealed in the MRI scans.

{¶12}     Dr. Rottinghaus related the MRI and EMG findings to the February 2008 work-place injury because of the mechanism of the injury, which had placed significant downward compression on Bell's spine. Thus, based on Bell's history, the mechanism of injury, the absence of age-related degenerative disc disease in Bell's lumbar spine, the clinical examinations, and the medical records, Dr. Rottinghaus

opined at trial that Bell had the conditions of lumbar radiculopathy at L4-5 and L5-S1 and that these conditions had been directly caused by his 2008 work-place injury.

{¶13}   Bell and his wife, Jill, both testified that Bell had no history of any radicular pain before the 2008 work-place injury, and Bell's medical records supported this testimony.  Both further testified that Bell's low back and radicular pain had been significant and constant since February 2008, and that Bell had complained about this pain to his treating physicians, but only Dr. Birkle and Dr. Rottinghaus had specifically noted these complaints.

{¶14}   The administrator did not offer a medical opinion to controvert Dr. Rottinghaus's opinion.  Instead, the administrator argued that even if Bell suffered from the radiculopathy conditions, as demonstrated by the EMG results, Bell failed to demonstrate that those conditions were caused by the 2008 work-place injury.

{¶15}   In support of this argument, the administrator stressed that the EMG had not been performed until one-and-a-half years after the lifting injury and that no "compressive pathology" such as a disc herniation or spondylolisthesis that may result in radiculopathy had been added to Bell's claim as a condition.  The administrator conceded, however, that this was not a legal requirement for Bell to participate for the condition of radiculopathy because radiculopathy had its own distinct International Classifications of Diseases code.

{¶16}   The trial court denied Bell the right to participate for the conditions of lumbar radiculopathy at L4-5 and L5-S1.  Bell now appeals, asserting that the trial court erred by (1) treating radiculopathy as a symptom rather than a condition by requiring a diagnosis of "compressive pathology" such as a herniated disc as a condition precedent to an Ohio workers' compensation claim allowance for radiculopathy and (2) denying him the right to participate when he presented

5

uncontroverted evidence that his radiculopathy arose out of and in the course of his employment and that a direct or proximate casual relationship existed between his injury and his harm or disability.

## II. Civ.R. 52 and App.R. 4

{¶17}   We begin with the first assignment of error, in which Bell argues that the trial court erred as a matter of law by holding that a radiculopathy is a symptom and that it could not be added to his claim without an allowance for a compressive pathology.

{¶18}   In this case, the trial court issued a general judgment.  Bell moved for findings of fact and conclusions of law under Civ.R. 52.  Then, within 30 days of the trial court's general judgment but before the trial court had issued findings of fact and conclusions of law, Bell filed his notice of appeal, thereby divesting the trial court of jurisdiction to issue findings of fact and conclusions of law.  Nonetheless, the trial court subsequently purported to issue findings of fact and conclusions of law. The parties made that entry a part of the appellate record by stipulation.

{¶19}   A timely filed request for findings of fact and conclusions of law under Civ.R. 52 tolls the time for filing a notice of appeal from the judgment.  App.R. 4.  But if a party files a notice of appeal from an otherwise final judgment before the trial court issues findings of fact and conclusions of law, then this court, "upon suggestion of any of the parties, shall remand the matter to the trial court to resolve" the request and "shall stay appellate proceedings until the trial court has done so." *Id.*

{¶20}   In this case, neither party requested a limited remand, as App.R. 4 directs, for the trial court to address Bell's request for findings of fact and conclusions of law.  Thus, we are left with a record that does not contain properly

issued findings of fact and conclusions of law. Because of this, the assignment of error is not demonstrated by the record, and we overrule it.

### III. Right to Participate

{¶21} Bell argues in his second assignment of error that the trial court's decision was against the manifest weight of the evidence where he demonstrated his right to participate by a preponderance of the evidence. We agree.

{¶22} In an appeal under R.C. 4123.512 from an order of the Industrial Commission, the trial court reviews de novo the issue of whether the claimant can participate in the workers' compensation fund. This court reviews the decision of the trial court as to issues of fact under a manifest-weight-of-the-evidence standard, and we will not reverse the trial court's judgment if it is supported by some competent, credible evidence. *Pflanz v. Pinkington Lof*, 1st Dist. No. C-100574, 2011-Ohio-2670, ¶ 10.

{¶23} To succeed on his workers' compensation claim to participate for the additional conditions, Bell had to demonstrate by a preponderance of the evidence that he suffered from the additional conditions and that they had been proximately caused by his February 2008 workplace injury. *See* R.C. 4123.01(C); *see also Fox v. Indus. Comm. of Ohio*, 162 Ohio St. 569, 576, 125 N.E.2d 1 (1955).

{¶24} Bell argues that the record contains no competent, credible evidence to support the trial court's judgment. He notes that Dr. Rottinghaus's opinions on the existence of the conditions and causation were uncontroverted and supported by substantial objective medical evidence and the history of the injury as presented by the testimony of Bell and his wife.

{¶25} We begin by noting that there was no real dispute at trial that Bell suffered from the additional conditions. The question was whether those conditions

7

had been proximately caused by the 2008 work-place injury. Dr. Rottinghaus testified that they had been, and his expert opinion was well supported by objective medical evidence.

{¶26} The administrator contends that the trial court was free to reject Dr. Rottinghaus's opinion. Generally, the administrator is correct. Expert testimony is not necessarily conclusive, even when it is not contradicted by the opposing party's evidence. *See State v. Brown*, 5 Ohio St.3d 133, 135, 449 N.E.2d 449 (1983); *Croft v. State Farm Mut. Auto. Ins. Co.*, 3rd Dist. No. 1-01-72, 2002 Ohio App. LEXIS 29, *7-8 (Jan. 8, 2002). *See also Walker v. Holland*, 117 Ohio App.3d 775, 794, 691 N.E.2d 719 (2nd Dist.1997).

{¶27} But the trier of fact may not arbitrarily ignore expert testimony; rather, some objective reasoning must support the decision to reject it. *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 71-73; *Walker*; *Coleman v. City of Hamilton*, 12th Dist. Nos. CA2011-03-049, CA2011-03-050, and CA2011-03-051, 2011-Ohio-4717, ¶ 14; *Croft*.

{¶28} Nothing in the record supports the administrator's claim that Bell needed an allowance for a "compressive pathology" condition before radiculopathy could be added to Bell's claim as a condition. Rottinghaus clearly rejected that position, and he unequivocally testified that in his opinion, the workplace injury had caused Bell's radiculopathy.

{¶29} The administrator suggests that the trial court was justified in rejecting Dr. Rottinghaus's testimony because Dr. Brannan had cleared Bell to return to work by April 2008 and because the conditions had not been conclusively diagnosed until one and one half years after the work-place injury.

{¶30}   We are not persuaded by this rationale.  Dr. Brannan's records do not demonstrate that Dr. Brannan gave any consideration to Bell's specific complaints of radiating pain to his thighs, which Dr. Birkle had earlier documented and confirmed. Further, the gap in time between the EMG nerve conduction study showing the radiculopathy and the work-place injury does not alone completely undermine Dr. Rottinghaus's opinion in this case where the test was taken as part of a progression of diagnostic tools and the results of the EMG were entirely consistent with the medical findings and the medical history leading up to the EMG.  Finally, the record contains no other explanation for Bell's radiculopathy other than the 2008 work-place injury.

{¶31}   As a reviewing court, we must indulge every reasonable presumption in favor of the trial court's judgment.  *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984); *Bales v. Miami Univ.*, 12th Dist. No. CA2006-11-295, 2007-Ohio-6032, ¶ 16.  But for a presumption to be reasonable, it must be supported by competent, credible evidence.  *See id.*  In this case, the record does not contain any competent, credible evidence to support the trial court's judgment denying Bell the right to participate in the workers' compensation fund for the additional conditions requested.

{¶32}   Accordingly, we sustain the second assignment of error, and we reverse the trial court's decision based on the manifest weight of the evidence. Additionally, we remand the case for the trial court to enter a judgment allowing Bell to participate in the workers' compensation fund for the additional conditions of lumbar radiculopathy at L4-5 and L5-S1 and to resolve Bell's claim for costs, including attorney fees, under R.C. 4123.512(F).

Judgment reversed and cause remanded.

**DINKELACKER, P.J., HENDON** and **CUNNINGHAM, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this decision.