[Cite as *Schaefer v. Lake Hosp. Sys., Inc.*, 2018-Ohio-3970.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| MARY SCHAEFER, | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | **CASE NO. 2017-L-102** |
| LAKE HOSPITAL SYSTEM, INC., et al., | : | |
| Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2016 CV 002198.

Judgment: Reversed and remanded.

*Jennifer L. Lawther*, *Daniel A. Kirschner*, and *Corey J. Kuzma*, Nager, Romaine & Schneiberg Co., L.P.A., 27730 Euclid Avenue, Cleveland, OH 44132 (For Appellant).

*Daniel J. Rudary*, Brennan, Manna & Diamond, LLC, 75 East Market Street, Akron, OH 44308 (For Appellee).

TIMOTHY P. CANNON, J.

{¶1}     Appellant, Mary Schaefer, appeals from the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of appellee, Lake Hospital System, Inc. ("Lake Hospital") on Ms. Schaefer's claim for workers' compensation. The judgment is reversed for the reasons that follow.

{¶2}     On December 29, 2016, Ms. Schaefer filed a notice of appeal and a petition and complaint, in the Lake County Court of Common Pleas, against Lake Hospital and the Bureau of Workers' Compensation. The complaint provides that Ms. Schaefer was

injured while working for Lake Hospital as a nursing assistant, on January 4, 2009, when she was kicked by a patient; her initial application for workers' compensation was allowed for various conditions. According to the complaint, on July 29, 2016, Ms. Schaefer sought additional allowances for preexisting conditions she alleges were aggravated by the 2009 injury; the aggravated preexisting conditions are described as "bulging disc with superimposed left foraminal herniation at L4-5, disc bulge at L5-S1, partial effacement of the fat beneath the left L4 nerve root, moderate grade partial intrasubstance tear of the right shoulder, right shoulder arthritis, and bulging disc at C4-5." The complaint provides that her claim for additional allowances was denied by the district hearing officer, the staff hearing officer, and the Industrial Commission of Ohio; these denials are not included in the record of this appeal.

{¶3} Lake Hospital answered the complaint, as did the Administrator of the Bureau of Workers' Compensation.

{¶4} On June 6, 2017, Lake Hospital filed a motion for summary judgment, arguing Ms. Schaefer could not prove her claim for substantial aggravation of preexisting conditions. In support of its motion, Lake Hospital presented the deposition testimony of Ms. Schaefer's doctor, Sami E. Moufawad, M.D. Dr. Moufawad testified he first evaluated Ms. Schaefer on April 14, 2015. He had no personal knowledge of whether Ms. Schaefer had been diagnosed with any of the conditions at issue prior to the 2009 injury, nor was he aware of any diagnostic or clinical findings, test results, or imaging studies that showed the existence of those conditions prior to 2009.

{¶5} Dr. Moufawad believed Ms. Schaefer's conditions were "preexistent" but "clinically silent" prior to the 2009 injury. To reach the foregoing determination, Dr.

2

Moufawad testified, he relied on the fact that Ms. Schaefer sought treatment and on her self-report of symptomology, for which she was given "multiple injections." He further testified that an MRI completed after the 2009 injury "showed [the] requested conditions * * * and they appear preexistent"; he noted that, without the injury "she might have been still asymptomatic, but because of the injury they started to become symptomatic," and that her symptoms "are stemming from these requested conditions."

{¶6} During the deposition, Dr. Moufawad was questioned about an August 27, 2016 medical report he sent to Lake Hospital's counsel; the report was attached to the transcript as an exhibit. In the report, Dr. Moufawad had indicated, "[t]he findings on my clinical examination are explained by the findings on the MRIs listed on my C9 dated 7.15.2016 and on the medical records provided. These findings may have preexisted injury but those were substantially aggravated by the work related injury since Ms. [Schaefer] explained to us that she never had those symptoms before the work related injury." The referenced C9 form, used by health care providers in workers' compensation claims for reimbursement, and the referenced MRI are not part of the trial court record.

{¶7} Ms. Schaefer did not attach any additional evidentiary material to her response in opposition to Lake Hospital's motion. She argued that the medical report and deposition testimony of Dr. Moufawad demonstrate the existence of both objective and subjective evidence that her preexisting conditions were substantially aggravated by the 2009 injury.

{¶8} In its reply, Lake Hospital argued that, "while Dr. Moufawad may believe that objective evidence supports his conclusion that Plaintiff's Requested Conditions are 'preexistent,' he has not cited *any* objective evidence showing that those conditions were

3

'substantially aggravated' by Plaintiff's workplace injury. To bridge the gap between existence and 'substantial aggravation,' Dr. Moufawad relied exclusively on Plaintiff's subjective complaints[.]" (Emphasis sic.) Thus, Lake Hospital maintained that summary judgment in its favor was appropriate because Ms. Schaefer could not demonstrate a genuine issue of material fact to be litigated.

{¶9} On July 18, 2017, the trial court granted summary judgment in favor of Lake Hospital. It found Ms. Schaefer presented no objective evidence that her preexisting conditions "were substantially aggravated by her 2009 injury, as opposed to being the result of time."

{¶10} Ms. Schaefer timely appealed and raises the following assignment of error:

{¶11} "The Trial Court erred in granting Appellee Lake Hospital System, Inc.'s Motion for Summary Judgment."

{¶12} Ms. Schaefer argues the trial court erred in granting Lake Hospital's motion for summary judgment because a genuine issue of material fact exists as to whether Ms. Schaefer's preexisting conditions were "substantially aggravated" by the 2009 injury.

{¶13} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers,* 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶27 (citation omitted).

{¶14} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2)

4

"the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶15} To prevail on a motion for summary judgment, the moving party has the initial burden to affirmatively demonstrate there is no genuine issue of material fact to be resolved in the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).

> [A] moving party does not discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. The assertion must be backed by some evidence of the type listed in Civ.R. 56(C) [i.e., pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any] which affirmatively shows that the nonmoving party has no evidence to support that party's claims.

*Id.* at 293 (emphasis removed). If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts which prove there remains a genuine issue to be litigated, pursuant to Civ.R. 56(E). *Id.* It stands to reason that if the moving party's burden is not met in the first instance, the burden never shifts to the nonmoving party, and the motion for summary judgment must be denied. *Id.*

{¶16} In order to participate in Ohio's workers' compensation system, an injured claimant must establish "by a preponderance of the evidence *both* that the injury arose out of and in the course of employment and that a proximate causal relationship existed between the injury and the harm or disability." *Bennett v. Admr., Ohio Bur. of Workers' Comp.*, 134 Ohio St.3d 329, 2012-Ohio-5639, ¶18 (emphasis sic; citations omitted). Proximate causation may be established by showing aggravation of a preexisting

5

condition, but the aggravation must be substantial. *See Starkey v. Builders FirstSource Ohio Valley, LLC*, 130 Ohio St.3d 114, 2011-Ohio-3278, ¶15; R.C. 4123.01(C)(4).

**{¶17}** Pursuant to R.C. 4123.01(C), "injury" "includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." "'Injury' does *not* include: * * * [a] condition that pre-existed an injury *unless* that pre-existing condition is substantially aggravated by the injury." R.C. 4123.01(C)(4) (emphasis added).

> Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.

*Id.*

**{¶18}** This court has yet to address the issue of "substantial aggravation" since this provision became effective. There is no statutory definition of "substantial aggravation," but it has been described as aggravation that is "substantial both in the sense of being considerable and in the sense of being firmly established through the presentation of objective evidence." *Pflanz v. Pilkington LOF*, 1st Dist. Hamilton No. C-100574, 2011-Ohio-2670, ¶18; *see also Rowland v. Buehrer*, 2d Dist. Montgomery No. 27412, 2017-Ohio-7096, ¶35.

**{¶19}** Several other appellate districts have held that the objective evidence required by R.C. 4123.01(C)(4) does not necessarily need to be pre-injury evidence. *See, e.g.*, *Gardi v. Lakewood City School Dist.*, 8th Dist. Cuyahoga No. 99414, 2013-Ohio-3436, ¶12; *Lake v. Anne Grady Corp.*, 6th Dist. Lucas No. L-12-1330, 2013-Ohio-4740, ¶20; *Salyers v. Buehrer*, 1st Dist. Hamilton No. C-140756, 2015-Ohio-4507, ¶7. There

6

must be, however, a "pre-injury reference point from which to compare the post-injury condition," which can be demonstrated through the testimony of an expert or post-injury medical records. *See Lake*, *supra*, at ¶21-29, citing *Bohl v. Cassens Transport Co.*, 3d Dist. Seneca No. 13-11-36, 2012-Ohio-2248, and *Brate v. Rolls-Royce Energy Sys., Inc.*, 5th Dist. Knox No. 12CA000001, 2012-Ohio-4577.

**{¶20}** Here, it is undisputed that no pre-injury medical documentation exists as to the preexisting conditions. This is logical, as there were apparently no symptoms prior to the injury; there would be no reason to have objective medical evidence of a condition that had not yet manifested. There also does not appear to be any dispute, however, as to the preexisting nature of the conditions. Dr. Moufawad testified that he agreed with the independent medical examiner that the post-injury MRI established Ms. Schaefer's conditions were preexisting.

**{¶21}** In its motion for summary judgment, Lake Hospital asserts Dr. Moufawad testified he concluded Ms. Schaefer's preexisting conditions were "substantially aggravated" by the 2009 injury *solely* based on her subjective self-reporting of pre- and post-injury symptomology. The trial court appeared to agree with this assertion, stating in its entry that "Dr. Moufawad specifically testified that he did not use MRIs or x-rays to reach that conclusion."

**{¶22}** We disagree with this characterization of Dr. Moufawad's deposition testimony and find that his testimony regarding Ms. Schaefer's preexisting conditions did not, as Lake Hospital asserts, demonstrate the absence of a genuine issue of material fact as to whether Ms. Schaefer suffered a substantial aggravation of those preexisting

7

conditions as a result of her 2009 injury. The relevant portions of his testimony are as follows.

**Q.** Your report indicates that the requested conditions in this case were substantially aggravated by Ms. Schaefer's work-related injury because she explained to you that she never had symptoms of the requested conditions before the work-related injury; is that accurate?

**A.** This is correct, yes.

**Q.** And so you were relying on Ms. Schaefer's report of her symptomatology in order to make a conclusion about substantial aggravation in this case?

**A.** That is correct. Her symptomatology and her seeking of treatment, and we did multiple injections for her.

**Q.** Dr. Moufawad, would you agree with me that to show a substantial aggravation we need to have some sort of preinjury reference point with which we can compare the postinjury symptoms; is that accurate?

**A.** Yes.

**Q.** And in this case, the preinjury reference point that you acknowledge in your letter, in your findings, is Ms. Schaefer's report of her preinjury symptomatology?

**A.** That is correct.

**Q.** Now, are you aware of any pre or postinjury diagnostic findings, clinical findings or test results that would establish a preinjury reference point or baseline for any of the requested conditions?

**A.** She has MRI after the injury, and the MRI showed these requested conditions that you listed and they appear preexistent; and since clinically she had no symptoms, this is how I drew my conclusion that since they were existent - - if it wasn't because of injury, she might have been still asymptomatic, but because of the injury they started to become symptomatic and this is how I based my opinion.

Now, as you know, I think by definition for BWC it has to be significant aggravation, and they define "significant aggravation" by requesting treatment and affecting somebody's activities of daily living, life and

8

stuff; and also I considered her seeking treatment, getting the injections and taking medication for her pain, that's a significant fact to qualify for this substantial aggravation.

**Q.** So just to clarify, for purposes of my question I guess I'm asking if you're aware of any pre or postinjury diagnostic findings, clinical findings or test results that would show us objectively the preinjury baseline or reference point for Ms. Schaefer's requested conditions before the workplace injury?

**A.** I'm not aware that she had x-rays before the injury - -

**Q.** Okay.

**A.** - - or MRIs.

**Q.** Okay. The postinjury test results or diagnostic findings or clinical findings that you have seen, do any of those show a baseline or preinjury reference point for Ms. Schaefer's requested conditions?

**A.** Can you please - -

**Q.** Sure. I'll try and rephrase that.

Have you seen any diagnostic findings, clinical findings or test results after January 4, 2009, for Ms. Schaefer that would show us a baseline or a preinjury reference point that we can use to measure the aggravation of Ms. Schaefer's requested conditions?

**A.** All these x-rays were done afterwards, but the findings on MRIs are in favor of something that happened over time. This is why I thought this preexistent.

I'm not aware - - quite frankly, I'm still struggling how to understand your question.

**Q.** Sure.

**A.** But if somebody have these changes, these changes are - - can go several years and they are existent. So once we have it, it's - - I mean, once we have these findings - - we know that these are old, they didn't happen instantly. Because of the symptoms they are now active.

So I don't have - - I can't point to something to tell me that this is how it was before and this is how it was after, because, as you know,

9

MRIs, x-rays, imaging studies are static. You can take a picture now, that doesn't show you progress in time.

**Q.** Okay.

**A.** I'm answering your question or - -

**Q.** That does answer my question, and to follow up on that I would ask: Given the fact that these MRIs and x-rays are static and they only show you a snapshot in time of what the condition is, would you agree with me that in order to determine whether or not there was a substantial aggravation in this case, you were relying on Ms. Schaefer's report of her preinjury and postinjury symptomatology?

**A.** Yeah, we established that - -

**Q.** Okay.

**A.** - - already.

**Q.** I think we're almost finished here, but I'll ask you this as a follow-up as well. Are you aware of any diagnostic findings, clinical findings or test results that would explain how Ms. Schaefer's January 2009 workplace injury substantially aggravated the requested conditions in this case?

**A.** Well, as I told you, I'm basing the substantial aggravation - - first, in order to qualify for substantial aggravation, we have to establish that something preexisted and we establish those by the MRI.

For the substantial aggravation, I based on this clinically; but with what you just said, she had no symptoms before as she told me and then she told me she started to have symptoms after the injury and things started to kind of get worse from that point on.

I didn't see the test results; however, when we look at these MRIs like a year or two after the injury and then the most recent one, it seems that these things continue to get worse with time.

**Q.** Mm-hmm.

**A.** I'm not going to say that they get worse because of her injuries that made things worse, because you know when you have the degenerative changes, which most of these things are, they're going to continue to get worse.

**Q.** Sure.

**A.** Sometimes the injury can make them go worse faster. But, again, I can't say that because of the injury she got worse faster, all I can say is because of the injury, things started to get worse and from that she didn't get better.

**Q.** Okay.

**A.** But I can't say that the MRI, for example, from 2010 or 2011, it was a little bad and from 2015 it got worse that's because of the injury of 2009. What I can say is all of these events are a result of injury.

**Q.** Okay.

**A.** Some people can have these findings and they can deteriorate over a few years, some people deteriorate over 10, 15 years.

**Q.** And you're basing your conclusion that these requested conditions were aggravated because of the injury based on the fact that Ms. Schaefer told you that before the injury she had no symptoms, after the injury she did have symptoms?

**A.** Before she did not, after she did.

**Q.** Okay. And that's what you're basing your substantial aggravation conclusion on?

**A.** She told me that, and also by the fact that she's requesting therapy and we're giving her injections.

**Q.** Okay.

**A.** As you know, we explain this to the patient so she knows, when we take somebody for injections to treat, the symptoms coming from these conditions there's always a risk of infection, bleeding, paralysis and death.

In my mind, if somebody wants to take this chance, they are having enough pain to say, "Look, I tried physical therapy, I tried medication, I'm still having symptoms and I want some relief."

So they can - - obviously we're not hoping - - or we're not looking to have any of these complications, because, as you know, these can have catastrophic complications, they are rare and we're planning on keeping them rare. But people are willing to take that chance even

though it's very small, extremely small, to try to get some relief of their symptoms.

{¶23} Dr. Moufawad testified that he concluded Ms. Schaefer had substantial aggravation of preexisting conditions based on Ms. Schaefer's report of her symptomology and the fact that she had sought treatment. Dr. Moufawad further testified, however, that his conclusion of "substantial aggravation" was informed by his clinical examination of Ms. Schaefer; her medical records; the results of her postinjury MRIs; and her course of treatment, which included multiple risk-laden injections. *Compare Salyers*, *supra*, at ¶10 (where, during a trial to the bench, the claimant's expert was "unequivocal that there was no objective evidence of the substantial aggravation of a preexisting injury," the claimant was not entitled to compensation).

{¶24} We note that this testimony was given in response to cross-examination by counsel for Lake Hospital. It is apparent that Dr. Moufawad was often perplexed by the line of questioning. Additionally, although Dr. Moufawad agreed multiple times that his conclusion was based on Ms. Schaefer's self-reporting, he was never asked whether that was the sole basis for his conclusion. Lake Hospital did not inquire any further of Dr. Moufawad as to his conclusory statement that, "[f]or the substantial aggravation, I based on this clinically," nor did it put forth any other medical evidence or testimony to contradict Dr. Moufawad's testimony.

{¶25} For purposes of the summary judgment exercise, what was elicited from Dr. Moufawad in his report and deposition was sufficient to comport with the R.C. 4123.01(C)(4) requirement of objective diagnostic findings, objective clinical findings, or objective test results. Construing the evidence in the light most favorable to Ms. Schaefer, as the nonmoving party, we conclude that Lake Hospital failed to meet its initial

12

evidentiary burden to affirmatively demonstrate no genuine issue of material fact exists as to "substantial aggravation." Thus, the burden never shifted to Ms. Schaefer to overcome the motion for summary judgment, and the trial court erred in granting summary judgment in favor of Lake Hospital.

{¶26} The judgment of the Lake County Court of Common Pleas is hereby reversed, and this matter is remanded for further proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶27} I dissent from the majority's decision to reverse the lower court's grant of summary judgment in favor of Lake Hospital System. Since the expert's testimony was entirely ineffective in creating a genuine issue of material fact as to the "substantial aggravation" of a preexisting condition for the purposes of workers' compensation, the grant of summary judgment in favor of Lake Hospital was proper and should be upheld.

{¶28} In order for Schaefer to prevail on her claim, it was necessary for her to demonstrate that she had a preexisting condition that was "substantially aggravated" by the injury she experienced while working for Lake Hospital System. Proof of substantial aggravation must be "documented by objective diagnostic findings, objective clinical findings, or objective test results." R.C. 4123.01(C)(4). This case turns on whether Schaefer was able to provide such objective evidence to prove that the condition was in

13

fact aggravated. It is apparent she was not.

{¶29} Schaefer depended entirely upon Dr. Moufawad's testimony. However, as the majority notes, his testimony demonstrated not only that he was "perplexed," but also that he simply could not demonstrate any grounds for his conclusion that there was a "preexistent injury," other than the patient's subjective complaints. While "subjective complaints" may be evidence of substantial aggravation, such complaints, without objective evidence, "are insufficient to substantiate a substantial aggravation." *Id.*; *Pflanz v. Pilkington LOF*, 1st Dist. Hamilton No. C-100574, 2011-Ohio-2670, ¶ 18 ("to be compensable, the aggravation of a preexisting condition must be substantial both in the sense of being considerable and in the sense of being firmly established through the presentation of objective evidence").

{¶30} Dr. Moufawad testified that he based his determination that Schaefer's preexisting condition was aggravated on her report of her symptomology, the fact that she had sought treatment, and that he had done "multiple injections" to treat her. He provided additional testimony that an MRI performed after the injury "showed these requested conditions that you listed and they appear preexistent" and that the MRI showed "something that happened over time." The majority incorrectly deems this sufficient, seeming to conclude that as long as some medical records or MRIs are present, the requirement for presenting objective clinical findings or results is satisfied.

{¶31} In *Lake v. Anne Grady Corp.*, 2013-Ohio-4740, 999 N.E.2d 1203 (6th Dist.), the Sixth District rejected a similar argument. In *Lake*, a doctor's affidavit concluded that there had been a substantial aggravation of an employee's preexisting condition of osteoarthritis. The doctor noted that he reached this conclusion based on the fact that

14

the employee had not had problems before the injury and since the aggravation "is documented by repeated x-rays, Ms. Lake's clinical findings, and her subjective complaints." *Id.* at ¶ 5. The Sixth District concluded that the doctor did not provide objective diagnostic findings, in that he referenced "anonymous x-rays and clinical findings" without attaching such documents or describing them in specific detail. It held that the grant of summary judgment in favor of the employer was proper since the doctor "fail[ed] to state how these anonymous x-rays and clinical findings support the conclusion that the condition has been substantially aggravated." *Id.* at ¶ 30. In the present matter, Dr. Moufawad referenced an MRI, although he did not provide the date of the MRI, it was not made part of the record, and he used it only to show evidence of preexisting conditions and not *how* the injury aggravated those conditions. He stated primarily that he relied on Schaefer's subjective complaints of pain that did not exist prior to the injury, the type of evidence which was rejected by the court in *Lake* as unsupported by objective findings*.*

{¶32} The majority's conclusion as to this issue also entirely misses the point of the rationale for requiring objective evidence relating the preexisting condition to the present injury. The existence of medical records and MRIs, when they show only that the patient has an injury, does absolutely nothing to clarify the key issue here: whether Schaefer's present injury was a substantial aggravation of a preexisting condition. Dr. Moufawad simply failed to explain **how** the 2009 injury substantially aggravated the condition. He repeatedly showed his lack of knowledge about how a substantial aggravation occurred, through his failure to provide a definitive statement to support his conclusion as well as through his lack of personal awareness of Schaefer's previous medical conditions, diagnostic findings, clinical findings, test results, or imaging studies

15

showing the existence of the conditions prior to 2009.

{¶33} The circumstances of this case are also similar to those in *Smith v. Lucas Cty.*, 6th Dist. Lucas No. L-10-1200, 2011-Ohio-1548. In *Smith*, the doctor's affidavit was based on the history related by the employee and an MRI which showed the existence of a medical condition that provided an explanation for appellant's current symptoms. The court held that this "did not establish that the condition was substantially aggravated by the injury." *Id.* at ¶ 18. Further, as held in *Lake*, references to subjective complaints coupled with vague references to visual imaging are not sufficient to establish substantial aggravation. *See Lake* at ¶ 30 ("[m]erely stating that objective evidence exists is not in and of itself objective evidence"). As described fully above, Dr. Moufawad failed to provide an explanation as to how the conditions were "substantially aggravated" by the injury, other than just a conclusory statement and reliance on Schaefer's subjective statements.

{¶34} In short, Dr. Moufawad's testimony simply does not demonstrate that his conclusion of substantial aggravation was supported by any acceptable, objective evidence. He made repeated statements supporting the inference that he relied solely on Schaefer's complaints, such as testimony that his conclusion was made "clinically" but immediately following this up with a discussion of the patient's description of her symptoms. When asked what he was basing his substantial aggravation conclusion on, he stated that it was based on her having symptoms after injury, requesting therapy, and receiving injections. With the majority's holding, this court is now essentially allowing a doctor to state medical conclusions, lacking any analysis or valid medical explanation, as grounds to grant workers' compensation. This greatly expands the coverage that may be

provided to individuals who have failed to prove in any reliable manner that they have a substantially aggravated preexisting condition.

{¶35} For the foregoing reasons, since Schaefer entirely failed to provide valid evidence to show how a preexisting condition was substantially aggravated by her injury, I would affirm the decision of the lower court. I respectfully dissent.