[Cite as *Houlihan v. Morrison*, 2021-Ohio-3087.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JOSEPH P. HOULIHAN, | : | APPEAL NOS. C-200379 |
| | | C-200382 |
| Plaintiff-Appellant, | : | TRIAL NO. A-1805439 |
| vs. | : | |
| | | *O P I N I O N.* |
| SARAH MORRISON, ADMINISTRATOR, OHIO BUREAU OF WORKERS' COMPENSATION, | : | |
| and | : | |
| HAMILTON COUNTY, | : | |
| Defendants-Appellees. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in C-200379; Appeal Dismissed in C-200382

Date of Judgment Entry on Appeal:  September 8, 2021

*Kneflin and Associates, LLC, M. Christopher Kneflin* and *Brent P. Martini,* for Plaintiff-Appellant Joseph Houlihan,

*Dave Yost*, Ohio Attorney General, and *David J. Fierst*, Assistant Ohio Attorney General, for Defendant-Appellee Sarah Morrison, Administrator, Ohio Bureau of Workers' Compensation,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, *James S. Ginocchio, Jr.*, Assistant Prosecuting Attorney, and *Christopher Sawyer*, Assistant Prosecuting Attorney, for Defendant-Appellee Hamilton County.

**CROUSE, Judge.**

**{¶1}** Plaintiff-appellant Joseph Houlihan appeals the judgment of the Hamilton County Court of Common Pleas denying his request to participate in the workers' compensation fund for the substantial aggravation of preexisting medical conditions. For the following reasons, we affirm the judgment of the trial court.

## I. Facts and Procedure

**{¶2}** Houlihan first began experiencing back pain in 2013. At the time, Houlihan was employed as a maintenance repair worker and part-time landscaper with defendant-appellee Hamilton County. The county had recently ended its contract with Blue Sky Lawn and Landscape, and assigned all landscaping work to its maintenance workers. The landscaping assignment spanned over 30 consecutive Saturdays and entailed various activities, including grass cutting and mulching.

**{¶3}** On July 15, 2013, Houlihan filed a First Report of Injury ("FROI"). He listed "[u]nknown damage to both shoulders." Houlihan subsequently sought treatment with Dr. Arthur Lee, an orthopedic surgeon. In October 2013, Lee filed a second FROI on behalf of Houlihan. Lee listed injuries to "both shoulders and lower back to a lesser degree." Houlihan never received formal treatment on his back. Houlihan was permitted to participate in the workers' compensation fund for right shoulder rotator cuff sprain, right shoulder labral tear, right shoulder rotator cuff tendonitis, left shoulder sprain, left shoulder labral tear, left shoulder rotator cuff tendinopathy, and lumbar sprain.

**{¶4}** Houlihan did not receive further treatment until October 2016, when he injured his back while unloading the dishwasher. Houlihan explained that he had not sought treatment in the interim because he had a high pain tolerance and wanted to continue working.

{¶5} One month later, in November 2016, Houlihan again injured his back while lifting a box of mattresses at work. At the time, Houlihan was employed as a facility maintenance worker for the county. Houlihan filed an FROI for lower back pain and sought treatment at TriHealth. Houlihan was unable to return to work for five to six weeks. During that time, Houlihan participated in the workers' compensation fund for a lumbar sprain/strain injury.

{¶6} In early 2017, Houlihan sought chiropractic shoulder treatment from Dr. John Ruch. During his treatments, Houlihan complained of persistent lower back pain. In April 2017, Ruch ordered a magnetic resonance imaging scan ("MRI"). Houlihan reported to the imaging tech that he suffered "[l]eft-sided, lower back pain with stiffness since lifting, twisting mattress and inventory while at work." The MRI showed that Houlihan had one disc herniation and two disc protrusions.

{¶7} In March 2018, Ruch referred Houlihan to Dr. Johnathan Paley for an orthopedic consult. In Paley's opinion, Houlihan's back abnormalities predated his landscaping duties with the county, and the landscaping duties had substantially aggravated the preexisting conditions.

{¶8} Houlihan subsequently requested an amendment of his 2013 workers' compensation claim to include the additional conditions of disc herniation L2-L3, disc displacement L3-L4, and disc displacement L4-L5. The Industrial Commission denied Houlihan's request, and he appealed to the Hamilton County Court of Common Pleas. Following a bench trial, the court denied participation for all of the additional conditions. The court found there was insufficient evidence to show a causal relationship between Houlihan's back conditions and his employment with

the county in 2013. Houlihan appealed, raising two assignments of error for our review.[1]

## II. Standard of Causation

{¶9} In his first assignment of error, Houlihan contends that the trial court applied the wrong causation standard to his claim.

{¶10} "Whether the trial court applied the proper legal standard poses a question of law, which we review de novo." *Dubose v. McCloud*, 1st Dist. Hamilton No. C-190690, 2020-Ohio-4972, ¶ 12.

{¶11} "A claimant seeking to participate in the workers' compensation fund must show a causal relationship between a workplace accident and the injury." *Salyers v. Buehrer*, 1st Dist. Hamilton No. C-140756, 2015-Ohio-4507, ¶ 4, citing *Fox v. Indus. Comm. of Ohio*, 162 Ohio St. 569, 576, 125 N.E.2d 1 (1955). Ohio law recognizes four theories of causation: direct causation, aggravation of a preexisting condition, repetitive trauma (or "*Village* injuries"),[2] and flow-through. *Starkey v. Builders FirstSource Ohio Valley, L.L.C.*, 130 Ohio St.3d 114, 2011-Ohio-3278, 956 N.E.2d 267, ¶ 15. Each is a separate and distinct theory of causation that may be used to satisfy the employee's burden of showing entitlement to participate in the workers' compensation fund. *See Salyers* at ¶ 6.

{¶12} At trial, Houlihan claimed that the 2013 landscaping duties caused repetitive trauma that substantially aggravated his preexisting back conditions. Houlihan argues that the trial court failed to consider and discuss the appropriate standard for *Village* injuries. However, Houlihan does not cite, and we cannot find, any cases that recognize a combined repetitive trauma/substantial-aggravation

---

[1] We note that Houlihan appealed twice from the trial court's judgment. Because both appeals raise the same issues, we dismiss the appeal numbered C-200382 as duplicative.

[2] In *Village v. General Motors Corp., G.M.A.D.*, 15 Ohio St.3d 129, 472 N.E.2d 1079 (1984), the Ohio Supreme Court recognized that an injury which gradually develops over time as a result of the injured worker's job-related duties is compensable under the workers' compensation fund.

theory of causation. Thus, the trial court did not err in requiring Houlihan to satisfy the usual substantial-aggravation standard.

{¶13} R.C. 4123.01(C)(4) provides the following directives for substantial-aggravation cases:

> Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.

Thus, the aggravation of a preexisting condition must be firmly established by objective evidence. *Pflanz v. Pilkington LOF*, 1st Dist. Hamilton No. C-100574, 2011-Ohio-2670, ¶ 18.

{¶14} However, R.C. 4123.01(C)(4) does not require the preexisting condition itself to be established by objective evidence. *Salyers* at ¶ 7. *See Gardi v. Lakewood City School Dist.*, 8th Dist. Cuyahoga No. 99414, 2013-Ohio-3436, ¶ 12; *Lake v. Anne Grady Corp.*, 2013-Ohio-4740, 999 N.E.2d 1203, ¶ 20 (6th Dist.); *Fabro v. OhioHealth Corp.*, 2014-Ohio-5161, 24 N.E.3d 614, ¶ 21 (10th Dist.). Although objective preinjury evidence is helpful, "it is not necessary so long as the worker can demonstrate through 'objective diagnostic findings, objective clinical findings, or objective test results' that the preexisting condition was substantially aggravated by the injury." *Lake* at ¶ 20-21, citing R.C. 4123.01(C)(4). "[A]ny requirement that a claimant must present pre-injury documentation of the pre-existing condition * * * adds a requirement that is not in the statute." *Gardi* at ¶ 12.

5

{¶15} Nonetheless, there must be a "pre-injury reference point from which to compare the post-injury condition." *Schaefer v. Lake Hosp. Sys., Inc.*, 2018-Ohio-3970, 120 N.E.3d 366, ¶ 19 (11th Dist.), citing *Lake* at ¶ 21-29. Without any evidence to suggest that the condition predated the injury, the claimant would be unable to show that the condition was substantially aggravated by the workplace incident. *Briggs v. Franklin Pre-Release Ctr.*, 12th Dist. Madison No. CA2013-10-035, 2014-Ohio-2477, ¶ 21.

{¶16} In this case, Houlihan argues that the trial court improperly required objective evidence of his preexisting conditions. According to Houlihan, the trial court relied solely on the lack of preinjury diagnostic testing in denying his substantial-aggravation claim under R.C. 4123.01(C)(4).

{¶17} Houlihan points to the following sentences in the trial court's decision to support his argument: "However, this Court finds that the record is devoid of objective medical evidence necessary to show these conditions existed beginning in 2013." And "It is undisputed there are no imaging tests from before Plaintiff's 2013 injury."

{¶18} But this court recently criticized "seiz[ing] upon a pair of sentences in the trial court's decision," instead of examining the decision as a whole. *Roos v. Morrison*, 1st Dist. Hamilton No. C-170646, 2019-Ohio-1514, ¶ 9-10 ("The Bureau, however, seizes upon a pair of sentences in the trial court's decision for the proposition that the court rejected the views of Officer Roos's expert. * * * We do not believe, however, that the court below went so far.").

{¶19} If we read these sentences in the context of the entire decision, it becomes clear that the court did not impose an additional requirement of objective evidence of a preexisting condition. The crux of the decision was that the record

lacked any evidence to show that Houlihan's back conditions predated the 2013 landscaping duties.  According to the court:

> Dr. Paley failed to demonstrate that Plaintiff had his conditions of back displacement and disc herniation at the time of Plaintiff's 2013 workplace injury.  It is undisputed there are no imaging tests from before Plaintiff's 2013 injury.  This Court does not find Plaintiff's MRI from 2017, four years following Plaintiff's 2013 Workers' Compensation Claim, to support the finding of a substantial aggravation of a preexisting condition.  As Dr. Paley explained, Plaintiff did have findings of a disc displacement and disc herniation, but they were not recognized until later.

Read as a whole, the trial court's decision required Houlihan to present evidence of a "pre-injury reference point from which to compare the post-injury condition[s]." *See Schaefer*, 2018-Ohio-3970, 120 N.E.3d 366, at ¶ 19.  And it found that he did not do so.

{¶20}  Houlihan has failed to demonstrate that the trial court applied the wrong substantial-aggravation standard under R.C. 4123.01(C)(4).

{¶21}  Houlihan's first assignment of error is overruled.

### III.    *Manifest Weight of the Evidence*

{¶22}  In his second assignment of error, Houlihan argues that the trial court's judgment is against the manifest weight of the evidence.  Houlihan claims that the evidence sufficiently established that the 2013 landscaping duties substantially aggravated his preexisting back conditions.  In contrast, appellees contend that the record supports the trial court's finding that there was no credible evidence of a preexisting condition.

{¶23} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. In determining whether a judgment is against the manifest weight of the evidence, we construe the evidence in favor of the trial court's judgment and findings of fact. *Id.* at ¶ 21; *Bell v. Bur. of Workers' Comp.*, 1st Dist. Hamilton No. C-110166, 2012-Ohio-1364, ¶ 31. We will not reverse a judgment supported by competent, credible evidence as being against the manifest weight of the evidence. *Pflanz v. Pilkington LOF*, 1st Dist. Hamilton No. C-100574, 2011-Ohio-2670, ¶ 10.

{¶24} In this case, the parties disputed the preexisting nature of Houlihan's back conditions. Both sides agreed that the 2016 MRI showed a disc herniation and two disc protrusions. However, Houlihan had not experienced back pain prior to 2013, and no medical professional had diagnosed Houlihan with a preexisting degenerative-disc condition. "In cases where the pre-injury condition is asymptomatic, providing an initial reference point becomes difficult, especially where the pre-existing condition has never been diagnosed." *Lake*, 2013-Ohio-4740, 999 N.E.2d 1203, at ¶ 21. Because there was no preinjury medical evidence, how the discs became herniated and protruding was the central issue at trial.

{¶25} Houlihan presented expert testimony that the discs herniated and protruded because the 2013 landscaping duties substantially aggravated his preexisting disc degeneration. The MRI film, which Paley reviewed, showed both disc herniation at the L2-3 level and disc protrusions at the L3-4 and L4-5 levels. According to Paley, a disc herniation occurs where the disc ruptures into the canal and pushes into existing nerve roots. Paley explained that a disc herniation is caused

by either direct trauma injury, like sudden heavy lifting, or natural degeneration overtime. A disc protrusion, which Paley stated was the same as a disc bulge or displacement, occurs where the disc dislodges from its normal position and protrudes into the canal. According to Paley, a disc protrusion is essentially a contained herniation that has not completely ruptured into the canal.

{¶26} Paley opined that Houlihan had preexisting, asymptomatic disc degeneration, which occurs naturally in 40 to 50 percent of middle-aged patients. Paley described Houlihan's disc herniation as mild and the protrusions as "longstanding." Paley testified that there were no acute findings in the MRI film. Yet, Paley's opinion was not scientifically reliable. Paley relied on orthopedic studies merely suggestive of a link between Houlihan's age and natural degenerative change. Paley failed to demonstrate that Houlihan "more likely than not" had disc degeneration that preexisted his 2013 work duties. *See Salyers*, 1st Dist. Hamilton No. C-140756, 2015-Ohio-4507, at ¶ 4, quoting *Rubenbauer v. C.W. Zumbiel Co.*, 1st Dist. Hamilton No. C-120486, 2013-Ohio-929, ¶ 6 ("Where medical expert testimony is necessary to demonstrate causation, the expert must testify that 'the injury was "more likely than not" caused by or substantially aggravated by the accident.' "). In the absence of such an explanation, Paley's opinion carried little, if any, weight.

{¶27} Appellees presented competing expert testimony that it was impossible to determine, based on the information in the record, when Houlihan's conditions developed. Dr. Bernard Bacevich testified that an MRI shows only "anatomical changes. It does not tell you when they occurred or how long they've been there." However, Bacevich noted that the MRI film showed a right L1 transverse fraction. According to Bacevich, the transverse is a piece of bone that extends to the side from the vertebra and acts as an anchor for several different muscles. Bacevich explained

9

that transverse fractures are caused by two common mechanisms: "One is, you can fall and stretch your back in a certain direction where the muscles pull on the bone and break it, or you can do something very strenuous where you're using the muscles very forcefully and the pull of the muscles on the bone can cause the fracture."

{¶28} Bacevich opined that that the discs more than likely ruptured as a direct and proximate cause of some type of trauma. According to Bacevich, "Acute disc herniations are quite painful episodes."

> [I]f you herniate a disc, you have to tear the annulus portion of the disc, which is a quite sensitive area with nerves – nerve fibers in it. And once you tear the annulus of one disc, it's very painful. You have immediate severe pain. And it's not just an ache in your back; it would be severe. And if you do it at three different discs, it would be extremely painful and you would go to the doctor complaining about your back[.]
>
> * * *
>
> [M]uscle pain generally resolves on its own in a few days. And that would not be typical of three levels of disc herniation, to resolve without any treatment.

{¶29} In his medical records, which Bacevich reviewed, Houlihan reported several back injuries. Prior to 2016, Houlihan reported intermittent lower back pain. On October 29, 2016, Houlihan reported, "He was standing on a storage shelf, lifting boxes, and twisted to move the boxes and felt a sharp pain in his lower back." On November 17, 2016, Houlihan reported, "He was bent over to pick up boxes and felt a pop in his back." Bacevich testified that bending, lifting, and twisting are common

causes for disc herniations. Thus, Bacevich concluded that the disc abnormalities "more likely related to the two incidents in 2016."

**{¶30}** The trier of fact is free to accept or reject any or all of a witness's testimony, including testimony of an expert witness. *Weidner v. Blazic*, 98 Ohio App.3d 321, 648 N.E.2d 565 (12th Dist.1994). The opinion of an expert is not conclusive upon a trier of fact and is "but an item of evidence intended to assist the trier of fact in consideration with the other evidence of the case." *Croft v. State Farm Mut. Auto. Ins. Co.*, 3d Dist. Allen No. 1–01–72, 2002 WL 18665, *3 (Jan. 8, 2002); *Bell v. Bur. of Workers' Comp.*, 1st Dist. Hamilton No. C-110166, 2012-Ohio-1364, ¶ 26. While a trial court may not "arbitrarily ignore" expert testimony, it may reject such testimony if there is "some objective reasoning." *Bell* at ¶ 27.

**{¶31}** After hearing all of the competing evidence, the trial court concluded that Paley's testimony was insufficient to establish that Houlihan suffered from a preexisting condition. Without any evidence to suggest that the conditions predated the injury, Houlihan could not show that the conditions were substantially aggravated by the 2013 landscaping duties. Therefore, the trial court did not err in finding that Houlihan failed to meet his burden of proving substantial aggravation under R.C. 4123.01(C)(4).

**{¶32}** Because the trial court's decision was not against the manifest weight of the evidence, Houlihan's second assignment of error is overruled.

### IV. Conclusion

**{¶33}** For the foregoing reasons, we overrule Houlihan's assignments of error and affirm the judgment of the trial court in the appeal numbered C-200379. The appeal numbered C-200382 is dismissed as duplicative.

Judgment accordingly.

**ZAYAS, P.J.,** and **HENDON, J.,** concur.

SYLVIA SIEVE HENDON, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

